## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

KATIANA SOENEN,
TAJA HIRATA-EPSTEIN,
CHLOE BURNS,
EMMA DENNIS-KNIERIEM,
JANE DOES 1-2, individually
and on behalf of all others similarly situated,
*Plaintiffs*,

V.

BROWN UNIVERSITY,

*Defendant*.

C.A. No. 1:21-cv-00325-JJM-PAS

## NOTICE OF SUPPLEMENTAL AUTHORITY
## BY DEFENDANT BROWN UNIVERSITY

Defendant Brown University ("Brown" or the "University") has filed a Motion to Dismiss Each Plaintiff's Individual Claims, Strike the Class Allegations, and/or Sever Claims, which the University has briefed in its memoranda.  ECF Docs. 20-1, 23, 27.  Among its arguments, the University has asserted that Plaintiffs Taja Hirata-Epstein ("Taja"), Chloe Burns ("Chloe"), and Emma Dennis-Knieriem ("Emma"), as graduates of the University, cannot seek the injunctive and declaratory relief requested in the First Amended Complaint.  Brown's Mem. (Doc. 20-1) at 23-25; Brown's Reply Mem. (Doc. 27) at 40-42.  Particularly, the First Amended Complaint seeks the Court's equitable and declaratory relief concerning the prospective application of Brown's Title IX policies and procedures.  FAC (Doc. 15) at 67, prayers for relief B-D.

In further support of Brown's arguments that Taja, Chloe, and Emma cannot seek either injunctive or declaratory relief against their alma mater, the University refers the Court to the First Circuit's opinion issued on August 4, 2022 in *Harris v. University of Massachusetts Lowell*. (copy attached as Exhibit A).  In *Harris*, the First Circuit ruled that the two plaintiffs (one an

alumna and the other a student who transferred out of the University of Massachusetts) could not seek prospective injunctive and declaratory relief regarding the implementation of the University of Massachusetts system's COVID-19 vaccination policies.  Because the vaccination polices no longer apply to them, there is simply no "ongoing conduct to enjoin" presently affecting either plaintiff.  Opin. at 8.   "The same goes for the students' claims for declaratory relief."  *Id*. at 9.

Here, the same goes for the three alumnae Plaintiffs' claims for injunctive and declaratory relief as to Brown's Title IX policies and procedures.  Further, the same would go for all members of the putative class who are "former female [Brown] students."  FAC at ¶ 266.  The First Circuit's ruling in *Harris* reinforces that Taja, Chloe, and Emma (and any former Brown students among the putative class) are not entitled to injunctive or declaratory relief against Brown, if any of their claims survive past the University's motion to dismiss.

BROWN UNIVERSITY

By Its Attorneys,

*/s/ Steven M. Richard*
Steven M. Richard (#4403)
Caitlyn Smith (#10361)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI  02903
srichard@nixonpeabody.com
cxsmith@nixonpeabody.com
Tel: (401) 454-1000
Fax: (401) 454-1030

Dated:  August 5, 2022

## <u>CERTIFICATION</u>

I certify that, on August 5, 2022, this notice of supplemental authority was filed and served electronically via the Court's CM/ECF system.

/s/ Steven M. Richard

# EXHIBIT A

# United States Court of Appeals
## For the First Circuit

---

No. 21-1770

HUNTER HARRIS; CORA CLUETT,

Plaintiffs, Appellants,

v.

UNIVERSITY OF MASSACHUSETTS LOWELL; JACQUELINE MOLONEY;
UNIVERSITY OF MASSACHUSETTS BOSTON; MARCELO SUÁREZ-OROZCO; SHAWN
DE VEAU,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

---

Before

Barron, Chief Judge,
Selya and Howard, Circuit Judges.

---

Ryan McLane, with whom McLane & McLane, LLC was on brief, for
appellants.
Richard S. Weitzel, Assistant Attorney General, with whom
Maura Healey, Attorney General of Massachusetts, and Christine
Fimognari, Assistant Attorney General, were on brief, for
appellees.

---

August 4, 2022

---

Howard, __Circuit Judge__.   This appeal arises from the dismissal of a section 1983 suit filed by two college students against their now-former universities and university officials. Seeking declaratory and injunctive relief, the students' complaint lodged constitutional challenges to the universities' COVID-19 vaccination policies, which require all students either to be vaccinated or to obtain an exemption in order to be allowed on campus.   The students appeal from the district court's order denying their motion for preliminary injunction and dismissing their complaint for failure to state a claim, see Fed. R. Civ. P. 12(b)(6).  In the period since judgment was entered below, however, both students have disenrolled from the universities -- one by transfer, and one by graduation.   Finding, as we do, that the students' claims are now moot, we dismiss the appeal without reaching the merits.

### I.

This action began in July 2021, when Hunter Harris, then a rising junior attending the University of Massachusetts, Lowell ("UMass Lowell"), and Cora Cluett, then a rising senior attending the University of Massachusetts, Boston ("UMass Boston"), jointly filed individual claims for prospective relief against their universities and several university officials (collectively, "UMass").  Specifically, the students' complaint alleged that the universities' recently implemented COVID-19 vaccination policies

violated their Fourteenth Amendment procedural and substantive due process rights.  Cluett also separately alleged that UMass Boston and its named officials violated her First Amendment right to free exercise of religion by denying her request for a religious exemption from the vaccination requirement.[1]  Contemporaneously with filing their complaint, the students moved for a preliminary injunction to block the universities from enforcing the policies against them for the fall 2021 semester.

The challenged policies were essentially the same in all relevant respects.  Each was announced in April 2021 and effective for the following fall semester.  UMass Boston, for one, "require[d] vaccinations for all UMass Boston students . . . coming to campus, or physically accessing campus resources for the fall semester, and [who] wish[ed] to live, learn and/or conduct research on campus."[2]  The announcement further explained that the university's officials had determined that the plan for "widespread immunization" was "[o]ne of the critical factors" and a "key component" of its "plan[] for a return to

_____

[1] Cluett also asserted claims under the Religious Freedom and Restoration Act, 42 U.S.C. § 2000bb-1, and Article 2 of the Massachusetts Declaration of Rights arising from the same alleged deprivation.  Both were dismissed, and Cluett does not challenge that portion of the district court's order.

[2] Marie Bowen et al., An Update on Vaccinations for the UMass Boston Community, UMass Boston (Apr. 26, 2021), https://www.umb.edu/news/detail/an_update_on_vaccinations_for_th e_umass_boston_community.

- 3 -

campus [in the] fall," finding that "vaccination is the most effective way to stop the spread of the virus."  It further stated that the university would "accommodate medical, disability, and religious exemptions."

In response to this announcement, Cluett submitted a written request for a religious exemption on the ground that the available "vaccinations [were] in direct conflict with [her] sincerely held religious beliefs."  Her initial request was denied by a review committee.  She later appealed to the school's Interim Vice Chancellor for Student Affairs, defendant Shawn DeVeau, and provided additional explanation for her faith-based objection. Days later, DeVeau denied Cluett's appeal, explaining that he understood her to be Roman Catholic and that, based on his research, receiving the vaccine would not violate the tenants of the Catholic faith.  He further explained that she could opt to unregister for in-person classes for the upcoming semester to avoid the vaccine requirement.

UMass Lowell's policy "require[d] all residential and commuter students" not qualifying for an exemption[3] "to be fully vaccinated against COVID-19 prior to the beginning of the fall semester to live, learn or visit any UMass Lowell campus or

---

[3] Harris did not seek an exemption.

property."[4]  According to the announcement, the university "ma[de] this decision based on widely anticipated additional state and federal public health guidelines in the coming months [and] ample vaccine availability," and its "strong[] belie[f]" that vaccination is the "most effective tool to return to . . . pre-pandemic campus life."  The announcement further linked to a "Frequently Asked Questions" page, which provided additional details on the policy and available vaccines.[5]  Among other things, this page explained that students who take "all [] classes online and never intend to be on the UMass Lowell[] campus" need not be vaccinated.

In August 2021, the district court denied the students' motion for preliminary injunction and granted UMass's motion to dismiss all claims.  See Harris v. Univ. Mass., Lowell, 557 F. Supp. 3d 304 (D. Mass. 2021).  The students filed this timely appeal.  During its pendency, the students remotely completed classes at their respective schools through the end of the fall 2021 semester.  In January 2022, Harris transferred from UMass Lowell to the University of South Carolina, where he apparently

---

[4] Joseph Hartman, UMass Lowell to Require Student COVID-19 Vaccinations for Fall, UMass Lowell (Apr. 28, 2021), https://www.uml.edu/alert/coronavirus/4-27-21-student-vaccine-requirement.aspx.

[5] COVID-19 Vaccine FAQ, UMass Lowell, https://www.uml.edu/alert/coronavirus/returning/covid-vaccine-faq.aspx (last visited Aug. 3, 2022).

remains enrolled.   Cluett completed her degree at UMass Boston through "remote learning" and received her diploma on May 31, 2022.

## II.

We begin and end our review by considering whether the students' claims are moot.[6]   UMass contends that they are,[7] now that Harris is no longer enrolled at UMass Lowell and Cluett has graduated from UMass Boston.   In other words, because neither

---

[6] To be sure, two distinct species of mootness pervade this appeal.   The first pertains to the students' appeal from the district court's denial of their motion for preliminary injunction, whereas the second pertains to their underlying constitutional claims.   We can make short work of the first.   Given the district court's final order of dismissal, the students' appeal from the preliminary injunction ruling is moot, as that order "was 'merged in' the final judgment dismissing the case." See Chaparro-Febus v. Int'l Longshoremen Ass'n, Local 1575, 983 F.2d 325, 331 n.5 (1st Cir. 1992) (quoting Shaffer v. Carter, 252 U.S. 37, 44 (1920)); see also Capriole v. Uber Techs., Inc., 991 F.3d 339, 343 (1st Cir. 2021) ("[A]n appeal from the denial of a preliminary injunction motion becomes moot when final judgment issues because the district court's denial of the motion merges with the final judgment.").

[7] Although UMass did not make this contention until oral argument, its oversight does not result in waiver.   Afterall, we have an "independent obligation to examine [our] own jurisdiction," FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990), and our jurisdiction does not encompass claims that have been rendered moot by "some intervening event," In re Sundaram, 9 F.4th 16, 21 (1st Cir. 2021).   Because the mootness doctrine derives from Article III, see DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) (per curiam), we ordinarily cannot bypass this inquiry when the record reveals mootness may be an issue, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93–94, (1998).   See also J.S. v. Westerly Sch. Dist., 910 F.3d 4, 9 (1st Cir. 2018) (noting that we "must ask whether [an] issue remains justiciable" before considering the merits of an appeal).

student is currently subject to the universities' vaccination policies, UMass argues that neither student would benefit from the exclusively prospective relief sought in the complaint.  We agree that the students' claims are moot, and further conclude that they are not otherwise justiciable under any exception to the mootness doctrine.  Accordingly, we must dismiss this appeal.

**A.**

Because Article III restricts our jurisdiction to "Cases" and "Controversies," U.S. Const. art. III § 2, "a suit becomes moot[] 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" See Chafin v. Chafin, 568 U.S. 165, 172 (2013) (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)); Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) ("To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extent at all stages of review, not merely at the time the complaint is filed.'" (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)).  "A party can have no legally cognizable interest in the outcome of a case if the court is not capable of providing any relief which will redress the alleged injury." Gulf of Me. Fishermen's All. v. Daley, 292 F.3d 84, 88 (1st Cir. 2002).  This is true "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit." Already, LLC, 568 U.S. at 91.  "Thus, 'if an event occurs while a

- 7 -

case is pending . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the [action] must be dismissed.'"  Gulf of Me. Fishermen's All., 292 F.3d at 88 (alterations in original) (quoting Church of Scientology v. United States, 506 U.S. 9, 12 (1992)).  Unless an exception to the doctrine applies, to do otherwise would be to render an advisory opinion, which Article III prohibits." Pietrangelo v. Sununu, 15 F.4th 103, 105 (1st Cir. 2021) (citing ACLU of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 52-53 (1st Cir. 2013)).

Here, the students' claims for injunctive relief are inescapably moot because the universities' vaccination policies no longer apply to them.  Cluett has graduated from UMass Boston and Harris is no longer enrolled at UMass Lowell.  Thus, there is simply "no ongoing conduct to enjoin" presently affecting either student.  See Bos. Bit Labs, Inc. v. Baker, 11 F.4th 3, 9 (1st Cir. 2021) (quoting Town of Portsmouth v. Lewis, 813 F.3d 54, 58 (1st Cir. 2016)).  Where, as here, "challenged measures [no longer] adversely affect[] any plaintiff's primary conduct," injunctive relief is unavailable and the attendant claims become moot.  See Arizonans for Official English, 520 U.S. at 67; Klaassen v. Trs. of Ind. Univ., 24 F.4th 638, 640 (7th Cir. 2022) (per curiam) (dismissing students' challenges to COVID-19 vaccination requirement as moot after students either received religious exemptions or withdrew from the university).

The same goes for the students' claims for declaratory relief.  As we have previously explained, requests for declaratory relief can only survive a mootness challenge where "the facts alleged . . . 'show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  ACLU of Mass., 705 F.3d at 53-54 (second alteration and emphasis in original) (quoting Preiser, 422 U.S. at 402).  Here, the students' alleged injuries are no longer "immediate nor real" for the same reasons just discussed.  See Bos. Bit Labs, Inc., 11 F.4th at 9 (quoting Lewis, 813 F.3d at 58).  That is, Cluett has graduated and Harris has withdrawn and transferred.  These changes in circumstance have extinguished any immediate and real effect that the challenged policies once had on the students during their enrollment in the UMass system.  See Governor Wentworth Reg'l Sch. Dist. v. Hendrickson, 201 F. App'x 7, 9 (1st Cir. 2006) (per curiam) (holding that parents' claims seeking injunctive and declaratory relief against school district arising from their son's suspension were rendered moot by the son's graduation during the pendency of the appeal); Fox v. Bd. of Trs. of State Univ. of N.Y., 42 F.3d 135, 140 (2d Cir. 1994) (holding that former college students' section 1983 claims seeking prospective relief from university's policy were moot, as court "could provide no legally cognizable benefits to [them] once they had left the [university]," whether

by graduation or otherwise).   Thus, the students' claims for equitable relief no longer present a "live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." ACLU of Mass., 705 F.3d at 54 (quoting Hall v. Beals, 396 U.S. 45, 48 (1969) (per curiam)).

Although "a claim for damages will keep a case from becoming moot where equitable relief no longer forms the basis of a live controversy," Thomas R.W. v. Mass. Dep't of Ed., 130 F.3d 477, 480 (1st Cir. 1997) (internal quotations and citations omitted), the students' complaint is devoid of any specific request for damages.   Faced with this reality, the students contended at oral argument that a live controversy still exists due to the complaint's request for "[a]ttorney fees and costs, plus any other relief this Court deems proper."   But this argument is dead on arrival.

First, it is well established that an "interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." Davidson v. Howe, 749 F.3d 21, 27 n.7 (1st Cir. 2014) (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480 (1990)).   Thus, the students' request for attorney's fees cannot rescue their mooted equitable claims from dismissal.   The same is true of their claim for costs. See 13C Wright & Miller, Federal Practice & Procedure, § 3533.3 n.75 (3d ed., April 2022 update)

("Claims for costs traditionally have not been thought sufficient to avoid mootness, presumably on the theory that such incidental matters should not compel continuation of an otherwise moribund action.").

Second, a complaint's general prayer for relief -- e.g., "such further relief as [the district] court deems just and proper" -- does not "operate to preserve a request for damages in order to avoid mootness where there is no specific request and no evidence to sustain a claim for [damages]."  See Thomas R.W., 130 F.3d at 480; see also Arizonans for Official English, 520 U.S. at 68, 71-72 (rejecting attempt to add nominal damages claim "extracted late in the day from [plaintiff's] general prayer for relief and asserted solely to avoid otherwise certain mootness"); Fox, 42 F.3d at 141 (same, where the complaint contained "absolutely no specific mention . . . of nominal damages," but only a general prayer for "such other relief as the Court deems just and proper"). So too here, the students' request for "any other relief [the] Court deems proper" cannot operate to save their otherwise moot action.  Fairly read, the students' "Complaint for Declaratory and Injunctive Relief," seeks only prospective, equitable relief, i.e., a declaration that the universities' policies are unconstitutional and an order enjoining future enforcement against the students.  There is "absolutely no specific mention" of

- 11 -

compensatory, punitive, or nominal damages in the complaint.[8]  See
Fox, 42 F.3d at 141.  And the students may not now, "at the eleventh
hour, . . . transform their lawsuit from a request for prospective
relief into a plea for money damages to remedy past wrongs."  See
Bain v. Cal. Teachers Ass'n, 891 F.3d 1206, 1211-14 (9th Cir. 2018)
(dismissing appeal involving section 1983 free-speech challenge to
teacher union's fee requirement as moot, where complaint sought
only prospective relief and plaintiffs had withdrawn from the union
during the pendency of appeal).

In  sum,  "no  live  controversy  in  the  ordinary  sense
remains" in the students' suit "because no court is now capable of
granting the relief" sought in the complaint.  See Kingdomware
Techs., Inc. v. United States, 136 S. Ct. 1969, 1975 (2016);
Pietrangelo, 15 F.4th at 105-06.  Consequently, the students'
claims are moot.

---

[8] The students contend that this lapse can easily be
remedied by amending their complaint.  But this argument is
foreclosed by "the familiar raise-or-waive rule," see Goodwin v.
C.N.J., Inc., 436 F.3d 44, 51 (1st Cir. 2006), as the students did
not seek to amend in the district court.  Cf. Allstate Ins. Co. v.
Global Med. Billing, Inc., 520 F. App'x 409, 412-13 (6th Cir. 2013)
(rejecting request to amend complaint to clarify damages claim
raised for first time on appeal).  Moreover, even if damages were
viable here -- which is a doubtful prospect, considering the
Eleventh Amendment, see Davidson, 749 F.3d at 27-29 -- "[a]t [this]
stage of the litigation" such a "possibility" cannot rescue mooted,
equitable claims from dismissal, see Arizonans for Official
English, 520 U.S. at 68.

**B.**

"Since the controversy at issue is not live, and the requested relief is not available, the [students] must rely on an exception to the mootness doctrine" to save their appeal from dismissal.  ACLU of Mass., 705 F.3d at 54.  The students have failed to demonstrate that any such exception applies to their claims.[9]  Their only attempt to do so was by suggesting at oral argument that it is "not impossible" that Harris could transfer back to UMass Lowell, seemingly invoking the exception for controversies that are, by their nature, "capable of repetition, yet evading review," see Kingdomware Techs., 136 S. Ct. at 1976 (internal quotations omitted); see also Gulf of Me. Fishermen's All., 292 F.3d at 88.  But avoiding mootness cannot merely rest on an alleged harm that is theoretically "not impossible" of repetition.  Rather, for this exception to apply, the party contesting mootness must show that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party w[ill] be subjected to the same action again." Doe v. Hopkinton Pub. Sch., 19 F.4th 493, 511 (1st Cir. 2021) (alteration and emphasis in original) (quoting

---

[9] We note that, as requested by the court at oral argument, UMass filed a letter confirming the mooting events with documentary evidence.  See Fed. R. Civ. P. 28(j).  The students did not respond to this submission.

Murphy v. Hunt, 455 U.S. 478, 482 (1982)); see also Libertarian Party of N.H. v. Gardner, 638 F.3d 6, 12 (1st Cir. 2011) (explaining that the burden for showing this exception applies is on "the party asserting that a case is not moot").  The students fail to carry their burden under either prong.

To do so under the first prong, the students must show that "the generic types of claims that they seek to pursue are likely to evade review." Cruz v. Farquharson, 252 F.3d 530, 535 (1st Cir. 2001).  This requires them to demonstrate that either the type of claims they bring "are inherently transitory," or "there is a realistic threat that no trial court ever will have enough time to decide the underlying issues (or, at least to [certify a class]) before a named plaintiff's individual claim becomes moot." Id.  Here, neither situation is present. Challenges to university-vaccination policies are not among or closely analogous to the "inherently transitory" claims that the Supreme Court has previously found to fit this exception. See ACLU of Mass., 705 F.3d at 57 (collecting cases involving elections, pregnancies, and temporary restraining orders).  And the students fail to demonstrate that such a challenge carries a "realistic threat that no trial court ever will have enough time to decide the underlying issues" or certify a class of students before becoming moot. See Cruz, 252 F.3d at 535.  Indeed, as the Seventh Circuit recently observed in a similar case, "[c]ollege

enrollment usually lasts [at least] four years" and college-vaccination policies are not ephemeral.  See Klaassen, 24 F.4th at 640.  The UMass system is no different, as both universities require many vaccinations[10] and there is no "suggest[ion] that SARS-CoV-2 is just a temporary addition to the list."  Id.  Thus, there is no reason to doubt that a similarly situated student at either university could present a similar challenge that could be resolved, or certified as a class, before he or she moves on from UMass.  See id.

     The students also have not shown that their specific claims are "capable of repetition," which requires them to "show a 'reasonable expectation' or 'demonstrated probability' that [they] 'will again be subjected to the alleged illegality.'"  ACLU of Mass., 705 F.3d at 57 (emphasis in original) (first quoting Murphy, 455 U.S. at 483, then quoting City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983)).  Notably, this requirement cannot rest on "[t]he possibility that other parties may subsequently bring a similar claim," Thomas R.W., 130 F.3d at 480.  The "reasonable expectation" of repetition must be specific to Harris and Cluett.

     As the students conceded at oral argument, nothing in the record suggests that Harris has any intent or plan to transfer

---

     [10]  See COVID-19 Vaccine FAQ, supra note 5; Immunization Requirements, UMass Boston, https://www.umb.edu/healthservices/screening_clinics (last visited Aug. 3, 2022).

back to UMass Lowell.  Nor is there any suggestion that Cluett
intends or plans to return to UMass Boston as a graduate student.
Although both scenarios are perhaps conceivable, avoiding
mootness, like establishing standing, requires an "actual or
imminent" and "concrete and particularized," redressable injury.
See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); see
Knox v. Serv. Emps. Int'l Union, Local 1000, 567 U.S. 298, 307-08
(2012) (noting that plaintiff must have a "concrete
interest . . . in the outcome of the litigation" to avoid
mootness).  Just as standing cannot rest on a "conjectural" or
"hypothetical" harm, see Lujan, 504 U.S. at 560, avoiding mootness
cannot rest on "speculation" about some future potential event,
see Pietrangelo, 15 F.4th at 106.  See also Bain, 891 F.3d at 1214.
Based on this record, we cannot say that there is a "reasonable
expectation" or "demonstrated probability" that Harris or Cluett
will again be affected by UMass's student-vaccination policies.
See Thomas R.W., 130 F.3d at 480; see also Bain, 891 F.3d at 1214
(holding that teacher's withdrawal from teachers' union mooted her
equitable challenge to union's membership policies,
notwithstanding her contention that she would face the same injury
"if [she] goes back to teaching"); Fox, 42 F.3d at 143 (dismissing
claims by former students as moot, despite possibility that they
could return to university to complete credits, where there was no
indication that any "ha[d] even applied . . . much less been

- 16 -

accepted," noting that a "bare statement of intention is insufficient to escape mootness").

### III.

For the forgoing reasons, we **dismiss** the students' appeal as moot. Because "the mooting events [were] within the control of the nonprevailing party," the judgment below "remains extent." See Med. Prof'l Mut. Ins. Co. v. Breon Lab'ys, Inc., 141 F.3d 372, 376 (1st Cir. 1998). All parties shall bear their own costs.