2022 WL 4773607
Only the Westlaw citation is currently available.
United States District Court, W.D. Virginia.

JANE DOE, Plaintiff,
v.
LIBERTY UNIVERSITY, INC., et al., Defendants.

CASE NO. 6:21-cv-00059
|
Filed 09/30/2022

MEMORANDUM OPINION

NORMAN K. MOON SENIOR UNITED STATES DISTRICT JUDGE

**\*1** Plaintiff has sued Liberty University and another student at Liberty, alleging that student raped her and, when Plaintiff reported it to the Title IX office, Liberty not only was deliberately indifferent to her sexual assault claim but retaliated against her. She also sued the other student for assault and battery.

This decision concerns Liberty's motion to dismiss three of Plaintiff's claims: those she described as "pre-assault deliberate indifference/hostile environment," "hostile environment," and "negligence." For the following reasons, the Court largely agrees with Liberty that these counts fail to state a claim for relief and must be dismissed.

Background

As recounted in her complaint, Plaintiff alleged that in October 2020, she was subjected to date rape by an individual Defendant she named in the complaint—then a student at Liberty University—who allegedly used alcohol and a "roofie" to render Plaintiff incapacitated, raped her, and impregnated her. Dkt. 1 ("Compl.") at 1.[1] Plaintiff alleged that when she reported the matter to Liberty, it "deterred" her from "taking proper steps to pursue her perpetrator," and instead shifted the focus onto Plaintiff's consumption of alcohol, thereby "allow[ing] her rapist to graduate unscathed." *Id.* at 1–2.

Plaintiff alleged that she began attending Liberty in 2019 and anticipated graduating in 2022. *Id.* ¶ 7. Plaintiff alleged that she mainly decided to attend Liberty because it reflected her religious and social values, including a belief against pre-marital sexual activity. *Id.* ¶¶ 10–11. Before October 30, 2020, Plaintiff considered the Named Defendant a friend, and she "had no romantic relationship with him of any kind." *Id.* ¶ 15. The Named Defendant was aware that Plaintiff was dating another student, and Plaintiff believed that the Named Defendant had a girlfriend at the time, as well. *Id.* ¶¶ 14–15.

On October 30, 2020, Plaintiff visited the Named Defendant's apartment, which was an off-campus apartment located in Lynchburg. *Id.* ¶¶ 16, 18. Plaintiff alleged that when she visited the Named Defendant was alone, though Plaintiff had discussed getting together with others as well, and "was under the impression that they would socialize as a group." *Id.* ¶ 19. While there, Plaintiff alleged that the Named Defendant gave her "at least two" "hard" iced teas, which she says typically carry between 5 and 8 percent alcohol by volume. *Id.* ¶ 17. Plaintiff alleged that the Named Defendant then offered her a third alcoholic beverage, which he prepared himself "outside of the view of Doe," unlike the prior two drinks. *Id.* ¶¶ 20–21. Within 20 minutes of consuming the third drink, Plaintiff alleged that she "lost consciousness and was incapacitated physically and mentally." *Id.* ¶ 22.

When Plaintiff regained consciousness, she alleged that she "realized her clothes had been stripped." *Id.* ¶ 23. Plaintiff alleged that then the Named Defendant "forcibly engaged in sexual intercourse with [her], without consent, using force and against her will." *Id.* ¶ 24. She further alleged that she "recalls being unable to speak or move her limbs and she was groggy and unable to resist or protest." *Id.* After the Named Defendant "eventually stopped raping [Plaintiff]," he "threw [her] clothes at her and demanded she leave." *Id.* ¶ 25. Then, Plaintiff alleged that when she "was unable to coherently respond," the Named Defendant "told her to get in his vehicle and he drove her to her apartment and dismissed her [from] the vehicle." *Id.* ¶ 26.

**\*2** Plaintiff alleged that the next day she was "battered and bruised," "experienced severe chest pain and had multiple bruises on her shoulder and legs, which were consistent with the use of force to hold her down and assault and batter her." *Id.* ¶ 28. She went to Lynchburg General Hospital, reported being raped, and a "rape kit" was administered. *Id.* ¶ 27.

In early November 2020, a representative from Liberty's Title IX office contacted Plaintiff, however, she alleged that she was still "traumatized, embarrassed, and humiliated from the rape," and she was "reluctant to speak." *Id.* ¶ 30. She also alleged that she was reluctant to speak because of Liberty's alleged "[f]ailure to protect other victims of sexual assault," and that she was "aware that [Liberty] tended to focus on the behavior of the victims." *Id.* ¶¶ 30–31. And since "she had consumed alcohol," Plaintiff was "concerned that she would be targeted for this infraction, but the rape would go unpunished." *Id.* ¶¶ 31–32. Plaintiff alleged that she told the Title IX representative "that she had been sexually assaulted," but Plaintiff was "uncomfortable telling the University that a student had raped her." *Id.* ¶¶ 33–34. Liberty's Title IX office was apparently first made aware of the Named Defendant when "a professor had reported [him] as the assailant." *Id.* ¶ 34.

About three months later, Plaintiff visited Liberty's Title IX office and had a four-hour meeting with a Title IX representative. *Id.* ¶ 35. During that meeting, Plaintiff disclosed the Named Defendant as her assailant. *Id.* Plaintiff alleged that while she was informed that she could file a formal complaint, the representative "lobbied her to pursue the informal mediation option," advising her that if she chose to file a formal complaint, "she would need to face [the accused] directly in the same room." *Id.* ¶ 36.

In the spring of 2021, Plaintiff alleged that Liberty's Title IX office sent an email jointly to herself and the Named Defendant "setting forth [her] claims against [him]." *Id.* ¶ 38. She also alleged that Liberty advised her that "her only recourse" was to enforce "the school's honor code, 'the Liberty Way'," and "not to pursue him for rape." *Id.* ¶ 39. Plaintiff further alleged that Liberty "failed to explain the process" to her for nine months, and seemingly tried "to dissuade [her] from taking action." *Id.* ¶ 43. Plaintiff alleged that "[w]hen she did decide to move ahead, they stalled the process, allowing the rapist to graduate unscathed." *Id.* "Only after this was [Plaintiff] advised that Liberty refused to act because the assault took place off campus, a fact clearly known to the University at an early stage of the process." *Id.*

Later in the summer of 2021, Plaintiff alleged that the director of an internship she was participating in "expressed an intention to terminate [her] from that internship" because she "intended to take legal action against the University (for the violation of Title IX)." *Id.* ¶ 44. She alleged that certain following actions in relation to her internship triggered "alarm" that "she was being frozen out of her internship and effectively fired due to a perception that [she] was going to sue Liberty University." *Id.* ¶ 47.

Plaintiff alleged that she became pregnant due to the rape, and while she sought to carry the pregnancy to term, she miscarried after eleven weeks. *Id.* ¶ 40. Plaintiff has also alleged that she has shown signs of post-traumatic stress disorder, including difficulty focusing in and out of academics, and struggles with flashbacks. *Id.* ¶ 42.

**\*3** In November 2021, Plaintiff filed suit against Liberty and the Named Defendant. Dkt. 1. In her complaint, Plaintiff raised seven counts. Plaintiff raised the following against Liberty only: (Count 1) "Pre-Assault Deliberate Indifference/ Hostile Environment"; (Count 2) "Post Assault Deliberate Indifference"; (Count 3) "Hostile Environment"; (Count 4) "Negligence"; and (Count 7) "Retaliation under Title IX." *Id.* at pp. 19–21, 23–25. Plaintiff also raised two claims solely against the Named Defendant: (Count 5) "Assault"; and (Count 6) "Battery." *Id.* at pp. 21–23.

This decision solely concerns Liberty's motion to dismiss Counts 1, 3 and 4, pursuant to Fed. R. Civ. P. 12(b)(6). Dkts. 15, 16. Liberty has answered as to Counts 2 and 7. Dkt. 18. Those, Liberty argued, "at least state viable claims under Title IX for deliberate indifference and retaliation," though Liberty states that it will still challenge them at a later stage of litigation. Dkt. 16 at 2. [2]

Standard of Review

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King*, 825 F.3d at 214.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "This standard does not require detailed factual allegations." *ACA Fin. Guar. Corp.*, 917 F.3d at 211 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, "[t]o meet the Rule 8 standard and 'survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to "state a claim to relief that is plausible on its face." ' " *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor," *King*, 825 F.3d at 212. However, the Court need not "accept the legal conclusions drawn from the facts," or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotes omitted).

Analysis

Liberty's motion to dismiss contends that Plaintiff's Count 1 ("Pre-Assault, Deliberate Indifference/ Hostile Environment"), Count 3 ("Hostile Environment"), and finally Count 4 ("Negligence") should be dismissed for failure to state a claim. The Court will address each of these, in turn.

1. *Pre-Assault Deliberate Indifference*

Plaintiff's first claim against Liberty is captioned "Pre-assault deliberate indifference/hostile environment." Compl. ¶¶ 106–09. Therein, Plaintiff alleged that Liberty "had actual knowledge prior to the above-described assault that its policies and procedures, as written and implemented, were enabling rapes and other serious sexual assaults." *Id.* ¶ 107. Further, Plaintiff alleged that Liberty "had specific policies ... to suppress complaints of sexual assault, rape, and other types of sexual harassment, and support accused campus predators." *Id.* ¶ 108. As a result, Plaintiff alleged, "Liberty deliberately ignored these policies, deeply harming Plaintiff as well as many of her peers." *Id.* ¶ 109.

**\*4** "To establish a Title IX claim based on student-on-student sexual harassment, a plaintiff must show that: (1) [she was] a student at an educational institution receiving federal funds; (2) [she] suffered sexual harassment that was so severe, pervasive, and objectively offensive that it deprived [her] of equal access to the educational opportunities or benefits provided by [her] school; (3) the school, through an official who has authority to address the alleged harassment and to institute corrective measures, *had actual notice or knowledge of the alleged harassment*; and (4) the school acted with deliberate indifference to the alleged harassment." *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 263–64 (4th Cir. 2021) (emphasis added). The primary issue in dispute is whether Plaintiff's "pre-assault deliberate indifference/hostile environment claim" satisfies the element of the claim that an appropriate official "had actual notice or knowledge of the alleged harassment."

As Liberty notes, this issue has already been resolved by this District on similar facts. *See Facchetti v. Bridgewater College*, 175 F. Supp. 3d 627, 639–41 (W.D. Va. 2016) (Dillon, J.). In that case, the plaintiff alleged that "the rampant, prior sexual assaults occurring on its campus of which Bridgewater was fully aware made plaintiff more vulnerable to being sexually assaulted by Vest," the alleged assailant. *Id.* at 639. Yet the court in *Facchetti* noted that, notwithstanding out-of-circuit precedent to the contrary, "[i]n the Fourth Circuit, though, there is a requirement that the defendant have actual notice of harassment against the plaintiff." *Id.* The court relied upon the Fourth Circuit's prior decision in *Baynard v. Malone*, 268 F.3d 228 (4th Cir. 2001). In *Baynard*, the Fourth Circuit noted that "the school's principal should have been aware of the potential for abuse by the teacher because the principal had received information before the abuse that the teacher had molested another male student years earlier." *Id.* at 639–40. However, the Fourth Circuit concluded "that the school could not be held liable because there was no evidence that the principal was actually aware that the student-plaintiff was being abused." *Id.* at 640. Accordingly, in *Facchetti*, the court wrote that it was "bound to follow *Baynard*," and, under its "more stringent test," "the notice here is plainly insufficient to impose liability on Bridgewater," because "[t]here is no allegation that Facchetti was previously assaulted by Vest, and ... no prior allegation that Vest committed any prior assault against anyone." *Id.* at 640–41. In other words, under *Baynard*, "[t]he fact that there were five other sexual assaults in campus dorms the preceding year is simply too tenuous to satisfy the 'actual notice' requirement under clear Fourth Circuit precedent." *Id.* at 641.

More recently, the Fourth Circuit has again had the occasion to address *Baynard* in its decision in *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257. In that case, the Fourth Circuit continued to affirm the "actual notice" standard, clarifying that "a school's receipt of a report that can *objectively* be taken to allege sexual harassment is sufficient to establish actual notice or knowledge under Title IX—regardless of whether school


officials *subjectively* understood the report to allege sexual harassment or whether they believed the alleged harassment actually occurred." *Id.* at 263 (emphases added). The school administrators in *Doe* had received reports of non-consensual sexual touching, but had concluded that it did not amount to a "sexual assault." The Fourth Circuit recounted *Baynard* and explained that that decision held that, "to establish [actual] notice," the plaintiff had to show that "the school was aware of an allegation that the teacher was *currently* abusing a student—although the school did not need to know the identity of the student allegedly being abused." *Id.* at 265. The court also explained that "nothing in *Baynard* suggested that a report alleging a *specific act or instance* of sexual harassment suffered by the plaintiff would be insufficient to establish actual notice." *Id.* Thus, the Fourth Circuit in *Doe v. Fairfax* held that, "when a school official with authority to address complaints of sexual harassment and to institute corrective measures receives a report that can objectively be construed as alleging sexual harassment, that receipt establishes actual notice of such harassment for Title IX purposes." *Id.* Therefore, while the Fourth Circuit in *Doe v. Fairfax* did clarify the "actual notice" standard, it continued to affirm it. *See id.* ("Our understanding of the actual notice standard is consistent with applicable Supreme Court precedent.").

**\*5** Plaintiff's Count 1, explicitly captioned "pre-assault deliberate indifference," seeks to render Liberty liable to *Plaintiff* for other prior sexual assault cases, before Liberty "receive[d] a report that can objectively be construed as alleging sexual harassment" involving Plaintiff. Plaintiff has not pointed the Court to any cases in the Fourth Circuit which have recognized that a plaintiff can state a valid claim for "pre-assault deliberate indifference." [3] *See* Dkt. 23 at 5–6. Nor has Plaintiff attempted to argue how *Doe v. Fairfax, Baynard v. Malone*, or any case in the Fourth Circuit could be read to allow for a theory of "pre-assault deliberate indifference." *Id.* And here, Plaintiff's own articulation of her theory of this count is that she has "identified specific, systemic, and pernicious deficiencies in the University's policies and actions" that "made assaults more likely to occur, discouraged reports, and were implemented in a way that was inconsistent with federal law," which allegations "are the gravamen of the pre-assault deliberate indifference claim." Dkt. 23 at 5. She appears to accept that her claim is "premised upon Liberty's response to *other students' reports of assault and harassment*," Dkt. 25 at 2, and in the absence of authority supporting such a claim, the Court concludes that it must be rejected.

Because such a claim fails to satisfy the Fourth Circuit's actual notice requirement and are not cognizable under *Baynard, Facchetti*, and *Doe v. Fairfax*, Plaintiff's "pre-assault deliberate indifference" claim fails.

2. *Hostile Environment*

Plaintiff's Count 3 against Liberty is entitled "Hostile Environment." Compl. ¶¶ 114–15. The specific allegations of this count are, at best, terse. Plaintiff contends that, "[t]he Liberty Way and its weaponization by Liberty University ... as well as [its] well-documented pattern of discrimination against women victims and in favor of male assailants, created an atmosphere on campus that was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of the education and crate a sexually hostile environment for the Plaintiff." *Id.* ¶ 115.

Liberty argues, not without force, that it is "unclear how Count [3] of the Complaint differs in any material way from Count [1]." Dkt. 16 at 10. Liberty notes that both counts are "denominated as claims for 'hostile environment,' and both appear to rely upon Liberty's response to incidents of sexual harassment *prior to* Doe's alleged assault as creating a hostile or discriminatory 'atmosphere' on Liberty's campus." *Id.* To the extent Count 3 makes this claim, it will be dismissed for the same reasons Count 1 was dismissed.

However, Plaintiff responds that Count 3 is distinct. In her brief, Plaintiff argues that "she felt excluded from the classroom, threatened with termination from her internship for pursuing her Title IX rights, and ultimately did, in fact, experience interference with her position at such internship following the threat." Dkt. 23 at 7. Accordingly, and "[i]n light of the fact that these actions all followed a rape, under a totality of the circumstances," Plaintiff contends that "the allegations are sufficient to plead a claim for hostile educational environment." *Id.* In reply, Liberty argues that Count 3 is a moving target, and that her "arguments regarding her hostile environment claim depart from the allegations in her complaint." Dkt. 25 at 3. Liberty also argues that "Plaintiff cannot salvage Count [3] of her Complaint by fundamentally altering it through her briefing." *Id.* However, that is a step too far, and one not necessarily resolved at this stage on the pleadings in this case. To be sure, the allegations in Count 3 itself are short. Compl. ¶¶ 114–15. However, they

incorporate prior factual allegations, and Plaintiff included numerous allegations in her complaint that can be reasonably read as support for her theory of Count 3 as articulated in her brief that she found Liberty to be a hostile educational environment based on its response to her sexual assault. *See, e.g.*, Compl. ¶¶ 44–46 (alleging retaliation at internship based on belief that she would sue for violation of Title IX), *id.* ¶ 60 (alleging that Liberty tried to "dissuade her [from] timely reporting the [sexual assault] or seeking remedies available to her"). Accordingly, to the extent Count 3 could be read as alleging a similar, post-assault, deliberate indifference count, the parties agree that claim should proceed past the motion to dismiss stage as to Count 2, and there is no compelling reason why a similar claim should be dismissed as to Count 3 merely because may be duplicative in some respect.

3. *Negligence*

**\*6** Finally, Plaintiff alleges that Liberty is liable for negligence, arguing that Liberty's conduct "made the Plaintiff's injuries more likely to occur and harder to prosecute because of the dangerous environment it created for students." Compl. ¶ 117. Accordingly, Plaintiff argues that Liberty is "directly liable in negligence for its role in causing *their* harms," and that the "University's negligence was sufficiently reckless, wanton, and gross as to warrant imposition of punitive damages." *Id.* ¶¶ 118–19.

The Court has previously addressed this issue, most recently in *Doe v. Washington & Lee University*, 439 F. Supp. 3d 784, 797–98 (W.D. Va. Feb. 10, 2020). The analysis there, as here, hinged on the "existence of a legal duty," as "[n]egligence is not actionable unless there is a legal duty." *Id.* at 797 (citing *Fox v. Curtis*, 372 S.E.2d 373, 375 (Va. 1988)). And the decision explained that "[a] federal district court is not empowered to recognize a new common law tort that has not been previously recognized by the Virginia courts." *Id.* Accordingly, this Court held that "Virginia does not support the proposition that a university owes its students a duty of care in these circumstances." *Id.* (citing *Jackson v. Liberty Univ.*, No. 6:17-cv-41, 2017 WL 3326972, at \*7–10 (W.D. Va. Aug. 3, 2017), and *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 588 (E.D. Va. 2018) (Ellis, J.)). In *Facchetti*, Judge Dillon similarly dismissed a premises liability claim, explaining that "Virginia strictly limits the circumstances in which a defendant has a duty to warn or protect another from the criminal acts of a third party," and concluding that she was "unsure whether Virginia would impose, as a matter of law, a heightened duty on a college to warn or protect its students from a third party's tortious acts on campus." 175 F. Supp. 3d at 643.

Plaintiff acknowledges that "Virginia case law regarding the circumstances which impose a duty of care upon a University for its students is somewhat unsettled," but has asserted that there are "certain circumstances under which a school can undertake steps that create a relationship whereby a duty is imposed or assumed." Dkt. 23 at 8. But Plaintiff cites no Virginia authority for that proposition, but instead relies on cases from district courts of New York. Plaintiff's counsel has acknowledged finding no contrary Virginia precedent to support her position and has presented the Court with no substantial basis to change the Court's prior holdings on this same issue in *Jackson v. Liberty* and *Doe v. Washington & Lee*. And, at bottom, a "federal district court is not empowered to recognize a new common law tort that has not been previously recognized by the Virginia courts." *Doe v. Washington & Lee*, 439 F. Supp. 3d at 797 (citing *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 348 (4th Cir. 1998)). Accordingly, the Court will dismiss Plaintiff's Count 4 for negligence.

Conclusion

For these reasons, the Court will dismiss Counts 1 and 4 from Plaintiff's complaint against Liberty. Count 3, to the extent it mirrors the allegations and claims in Count 2, may proceed. The remaining counts are unaffected. Therefore, the Court will grant in part Liberty's motion to dismiss. Dkt. 15. An appropriate Order will issue.

The Clerk of Court is directed to send this Memorandum Opinion to counsel of record.

ENTERED this 30th day of September, 2022.

**All Citations**

Slip Copy, 2022 WL 4773607

## Footnotes

| | |
|---|---|
| 1 | As this case is before the Court on a motion to dismiss, the Court must take the facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). |
| 2 | The Named Defendant has also filed a motion to dismiss Plaintiff's complaint for failure to comply with Fed. R. Civ. P. 10(a), for failure to include Plaintiff's name in the complaint, and motion to strike pursuant to Fed. R. Civ. P. 12(f) for substantially the same reasons. Dkts. 10, 11. That motion has been addressed in a separate opinion. |
| 3 | The Ninth Circuit and the Tenth Circuit by contrast, have accepted a "pre-assault claim," holding that "such a claim is a cognizable theory of Title IX liability." *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1111–12 (9th Cir. 2020) (citing *Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170 (10th Cir. 2007)). Notably, the Ninth Circuit in *Karasek* concluded that "[a]llegations that [University of California] had actual knowledge or acted with deliberate indifference to a particular incident of harassment are unnecessary to sustain this theory of liability." *Id.* at 1113. |

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.