UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KATIANA SOENEN, TAJA HIRATA-EPSTEIN,
CHLOE BURNS, EMMA DENNIS-KNIERIEM,
JANE DOES 1-2, individually and
on behalf of all others similarly situated,

                Plaintiffs,

v.                                      C.A. No.: 21-cv-325-JJM-PAS

BROWN UNIVERSITY,

                Defendant.

**DEFENDANT BROWN UNIVERSITY'S MEMORANDUM IN
SUPPORT OF ITS  OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT**

For the reasons argued below, Defendant Brown University ("Brown") opposes Plaintiffs' Motion to Amend (Doc. No. 44), seeking leave to file a Second Amended Complaint ("SAC") (Doc. No. 44-1).

**I.    INTRODUCTION**

Since commencing this litigation a year-and-a-half ago on August 6, 2021, Plaintiffs have improperly sought to use this single action as a means to litigate collectively what are actually distinct lawsuits particular to each Plaintiff with purely individualized liability and damages claims.  Through its Order entered on October 18, 2022 (Doc. No. 34), the Court substantially narrowed this litigation, by dismissing the unrecognized, implausible, or untimely claims permeating Plaintiffs' First Amended Complaint ("FAC," Doc No. 20).

1

After two prior attempts at pleading, Plaintiffs want a third bite at the apple through their proposed SAC, primarily seeking to revive the properly dismissed claims of Chloe Burns ("Chloe").[1] Unlike the prior pleadings where Chloe raised the identical counts as the other Plaintiffs, she now wants to stand alone to litigate a claim alleging a violation of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681-88, based upon alleged "Retaliation by Withholding Protection Otherwise Conferred by Title IX." SAC at Count V. None of the five remaining Plaintiffs can pursue such a Title IX retaliation claim under the Court's Order, nor has any other Plaintiff sought to restate such a claim in the proposed SAC. *Id*. Also, Chloe wants to litigate an individualized claim of intentional infliction of emotional distress. *Id*. at Count VI. Nothing has changed in the proposed SAC to justify reviving Chloe's Title IX retaliation and intentional infliction of emotional distress claims.[2]

Regarding the five remaining Plaintiffs,[3] a close reading of the proposed SAC shows that they still wrongly want to litigate dismissed allegations relating to so-called "Pre-Assault" or "Heightened Risk" Title IX claims in Counts I-III and seek to recover emotional injury damages under each Title IX count. Such allegations and claims must not remain in a SAC, if one is eventually permitted to be filed in order clean up the operative pleading and have it actually comply with the Court's Order.

---

[1] Brown refers to each Plaintiff by her first name to be consistent with the pleadings in this litigation and not out of any disrespect.

[2] If Chloe requests that the Court enter a Rule 54(b) judgment in Brown's favor regarding the Order's dismissal of her claims, Brown would not object to its entry to allow her to pursue appellate review at this time.

[3] Those five Plaintiffs are Katiana Soenen ("Katiana"), Taja Hirata-Epstein ("Taja"), Emma Dennis-Knieriem ("Emma"), Jane Doe 1 ("Jane 1"), and Jane Doe 2 ("Jane 2"). Only Jane 1 and Jane 2 are current Brown students.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15, Plaintiffs had the right to amend their pleading once as a matter of course, which they did in response to Brown's first Motion to Dismiss with their filing of the FAC. In all other instances, such as their proposed SAC, Plaintiffs require either Brown's consent (which they lack) or leave of Court (which should not be granted for reasons argued in this memorandum). While the Court typically gives leave when justice so requires, it should not do so when an amendment "would be futile or reward undue delay." *Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 117 (1st Cir. 2009).

"In the context of a motion to amend, 'futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Teva Pharms Int'l GmbH v. Eli Lilly & Co.*, 2022 WL 104911, at *6 (D. Mass. Jan. 11, 2022) (quoting *O'Leary v. New Hampshire Boring, Inc.*, 323 F.R.D. 122, 126 (D. Mass. 2018)). "If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." *Hatch v. Dept. of Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001). In short, an amendment must state a "plausible entitlement to relief." *Rodriquez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 559 (2007)).

## III. ARGUMENT

### A. Chloe's claims should remain as dismissed in full.

When this litigation began a year and a half ago on August 6, 2021, Chloe stated a mere six paragraphs pertaining to her individual allegations. (Doc. 1, ¶¶ 109-115). When faced with Brown's first Motion to Dismiss, Plaintiffs recognized that their Complaint was replete with deficiencies (including the scant pleading of Chloe's allegations), and they elected to replead rather

3

than object to Brown's dispositive motion. In the FAC, Chloe expanded her individualized allegations (Doc. 15, ¶¶ 148-183), which Brown again challenged as untimely and implausibly pled in its renewed Motion to Dismiss (Docs. 20, 27).

The Court granted Brown's Motion to Dismiss on statute of limitations in substantial part as to Chloe, finding that her "only preserved claim" was pled in "Count V (Retaliation) for the allegedly retaliatory action that Brown took in rendering a decision against her on August 6, 2018." Doc. 34 at 1-2. The Court dismissed all of Chloe's other claims "because they turn on facts that occurred before August 6, 2018." *Id*. Chloe's Title IX retaliation claim, just like the other five Plaintiffs' Title IX retaliation claims, was dismissed because there were no alleged facts "in support of plausible claims that Brown retaliated against [each Plaintiff] for making a complaint." *Id*. at 2.

Applying the Court's Order, let's review where this substantially narrowed litigation stands. Of the eleven counts pled in the FAC, only the following five counts survive among the five remaining Plaintiffs, who each raise purely individualized liability and damages claims:

- Three Title IX counts (Counts I-III) that are limited to Brown's "post-reporting" response to each Plaintiff's alleged sexual assault;
- A Rhode Island Civil Rights Act ("RICRA") count mirroring the "post-reporting" Title IX counts (Count XI); and
- An intentional infliction of emotional distress count (Count IX).

Of procedural significance, the Court dismissed Plaintiffs' improper attempt to transform this litigation into a Rule 23(b)(3) lawsuit for class-wide monetary damages. Instead, the Court has limited this putative class action to a Rule 23(b)(2) lawsuit, solely to determine whether a class consisting of current Brown students can be certified and a class-wide injunction is appropriate.

4

*Id*. at 4.  Just two of the five remaining Plaintiffs can be part of such a putative class action – Jane 1and Jane 2, who are the only current Brown students among Plaintiffs.[4]

The other three remaining Plaintiffs – Katiana, Taja, and Emma, who have either transferred or graduated from Brown – do not have standing to be a Rule 23(b)(2) class representative, nor can they be part of a class comprised of current Brown students that would benefit from a class-wide injunction if one were ever entered (which should not occur for many reasons that Brown will show going forward).  The Court dismissed Katiana, Taja, and Emma's claims for injunctive relief due to their lack of standing.  Order at 4.  Instead, Katiana, Taja, and Emma remain in this litigation only able to pursue each of their individualized claims for damages.

Now, Chloe wants to rejoin this litigation to pursue entirely individualized Title IX retaliation and intentional infliction of emotional distress claims seeking monetary damages.[5]  As a Brown alumna (Class of 2019) pursuing her professional career, Chloe cannot act as a Rule 23(b)(2) class representative because she lacks standing to seek an injunction against her alma matter, nor can she be part of a class comprised only of current students if one is certified.  As argued below, Chloe's third attempt at pleading still fails to cure the clear untimeliness and implausibility of her claims.  Finally, if the Court reinstates any of Chloe's claims over Brown's

---

[4] Soon, only one Plaintiff will have standing to seek injunctive relief.  Jane 1 is scheduled to graduate from Brown in May 2023 and, upon her graduation, her claims for injunctive relief will be mooted, which will leave Jane 2 (a Ph.D. student) as the only Plaintiff with standing to seek injunctive relief and able to serve as a Rule 23(b)(2) class representative.  As Brown will argue in a summary judgment motion, Jane 2 cannot pursue any Title IX claims against Brown because she alleges a single incident of sexual misconduct that occurred at a third-party owned and controlled off-campus residence during a privately held (non-University sanctioned) social function.  Jane 2 does not allege any actionable Title IX sexual harassment that occurred within Brown's education program or activity.

[5] Unlike the other Plaintiffs, Chloe does not seek litigate a RICRA claim.

objection, she should not be allowed to proceed in this lawsuit with her purely individualized claims, which should instead be severed into a separate proceeding.

> **1. Chloe's claims pertaining to discrete acts predating August 6, 2018 are time-barred because the "continuing violation" and "continuing tort" doctrines are inapplicable.**

### i.     Title IX Retaliation Claim

Title IX does not state an express limitations period. Borrowing from Rhode Island's personal injury statute (R.I.G.L. § 9-1-14(b)), a Title IX cause of action must be pled within the three years of its accrual. *Doe v. Brown Univ.*, 327 F. Supp. 3d 397, 407 n. 7 (D.R.I. 2018). The Court has held that the "continuing violation doctrine," as announced by the Supreme Court in *National Railroad Corp. v. Morgan*, 536 U.S. 101 (2002), can apply to Title IX claims under limited circumstances, where an alleged hostile environment is anchored by at least one timely pled unlawful practice. *Id*. at 408.

Applying *Morgan*, Chloe's Title IX retaliation claim can only reach back to August 6, 2018. In the proposed SAC, Chloe pleads fifty-seven paragraphs (¶¶ 147-203), but only seven (¶¶ 197-203) pertain to alleged events dated on or after August 6, 2018. Just like in the initial Complaint and the FAC, Chloe wrongly wants to litigate in the SAC alleged events extending two years and two months before the August 6, 2018 cut-off date, seeking to reach all the way back to April 14, 2016. *See* SAC ¶ 152 (alleging that the "details" of an alleged "continuing course of retaliation" began on April 14, 2016 when she was allegedly sexually assaulted).

In the proposed SAC, Chloe's Title IX claim is based upon only alleged retaliation (Count VI), not an alleged Title IX "Hostile Environment" as pled by the other five Plaintiffs individually (Count II) and by Jane 1 and Jane 2 as class representatives (Count IV). In *Morgan*, the Supreme Court's limitations analysis distinguished between (1) *discrete* acts of alleged retaliation or

6

discrimination and (2) an alleged hostile environment. 536 U.S. at 105 (analyzing such claims as pled under Title VII of the Civil Rights Act of 1964). The Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. The continuing violation doctrine does not apply to claims based on discrete actions (such as retaliation), even if those alleged actions are serial. *Id.* at 114-15. The doctrine can only apply to a hostile environment claim under appropriate circumstances, where an unlawful practice is not tied to a particular day, but occurs over time (in direct contrast to a discrete act) and may not be actionable on its own. *Id. See also Ayala v. Shineski*, 780 F.3d 52, 57 (1st Cir. 2015) (holding continuing violation doctrine "does not apply to 'discrete acts' of alleged discrimination" but rather "only to claims . . . that by their very nature require repeated conduct to establish an actionable claim, such as hostile environment claims.").

The continuing violation doctrine cannot save Chloe's Title IX untimely pled retaliation claim premised upon alleged discrete acts. To start, Chloe alleges belatedly again that Brown somehow retaliated against her through the manner in which it investigated and determined the cross-complaints between her and a male student pertaining to their April 14, 2016 sexual encounter. Applying its policies, Brown's process to investigate and decide the cross-complaints completed on December 19, 2017 (SAC ¶ 184) – eight months before the August 6, 2018 limitations period cut-off date. Also, yet again, Chloe alleges belatedly that Brown somehow retaliated against her through the late fall 2017 selection of the male student to be a speaker at a mid-year graduation ceremony – again seeking to reach back by more than eight months than she can legally do so. SAC ¶ 354. While the SAC adds more words and paragraphs, Chloe offers nothing new to render timely what has already been properly adjudicated to be untimely pled challenges to discrete acts.

Trying to avoid her clear limitations problem, Chloe seems to contend that she can pursue a novel Title IX "retaliatory hostile environment" theory, which has not been recognized by the First Circuit. While doing so, she has chosen to forgo a Title IX "hostile environment claim," which the other five Plaintiffs have pled. Just as the Court appropriately declined to allow Plaintiffs to pursue an unrecognized Title IX "pre-assault" or "heightened risk" claim (Doc. 24 at 2), it should not allow Chloe to use this litigation as her individual platform to create an entirely new theory of Title IX retaliation liability. *See*, *e.g.*, *Doe #1 v. Bd. of Supervisors of La. St. Univ. and Agricultural and Mechanical Coll.*, 2022 WL 16701930, at *18-19 (M.D. La. Nov. 3, 2022) (declining to recognize plaintiffs' time-barred allegations of discrete acts of Title IX retaliation under a "continuing retaliation" theory that the Fifth Circuit has not recognized).[6]

### ii. Intentional Infliction of Emotional Distress Claim

An intentional infliction of emotional distress claim must be filed within the three-year limitations period prescribed by R.I.G.L. § 9-1-14(b). Under Rhode Island law, to extend her common law claim to reach beyond August 6, 2018, Chloe must show the applicability of the "continuing tort" theory, which the Rhode Island Supreme Court has never applied to an intentional infliction of emotional distress claim.

As Judge Smith has held, "Rhode Island has not fully recognized the continuing violation doctrine in the tort context." *Adams v. Town of Burrillville,* 249 F. Supp. 2d 151, 155 (D.R.I. 2003) (citing *Nicolo v. Phillip Morris, Inc.*, 201 F.3d 29, 39 (1st Cir. 2000)). More recently, the Rhode Island Supreme Court has held that a review of its precedent "reveals that [the Court] ha[s] only applied the continuing tort doctrine only once, in the context of claims for conversion and

---

[6] Moreover, Chloe offers nothing to demonstrate that she lacked any information to enable her to recognize her alleged claims or that Brown engaged in any conduct that prevented her from timely filing suit.

unjust enrichment." *Boudreau v. Automatic Temperature Controls, Inc.*, 212 A.3d 594, 602 (R.I. 2019) (citing *Narragansett Elec. Co. v. Carbone*, 898 A.2d 87, 101 (R.I. 2006)). By relevant analogy, the Rhode Island Supreme Court refused to hold that the "discovery rule" applied to alter the limitations period analysis of an intentional infliction of emotional distress claim. *Hill v. R.I. State Employees' Retirement Bd.*, 935 A.2d 608, 617 (R.I. 2007). Consequently, the Court should not create new Rhode Island common law by applying the "continuing tort" doctrine to enable Chloe to pursue allegations predating August 6, 2018. *See Doe v. Trs. of Bos. Coll.*, 942 F.3d 527, 535 (1st Cir. 2019) ("A litigant who chose federal court over state court cannot expect this court to . . . blaze new and unprecedented jurisprudential trails as to state law.") (internal quotation marks and citation omitted).

### 2. To the limited extent that they may be timely pled, Chloe's claims are implausible

#### i. Title IX Retaliation Claim

In *Jackson v. Birmingham Bd. of Educ.*, the United States Supreme Court held that the private cause of action implied by Title IX encompasses claims "where the funding recipient retaliates against an individual because he [or she] has complained about sex discrimination." 544 U.S. 167, 171 (2005). The Court reasoned that the funding recipient's "[r]etaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action[,]" because "[r]etaliation is, by definition, an intentional act." *Id*. at 173-74.

Citing to analogous law under Title VII of the Civil Rights Act of 1964, the First Circuit has delineated the elements of a Title IX retaliation claim. *Frazier v. Fairhaven Sch. Comm*., 276 F.3d 52, 67 (1st Cir. 2002). A plaintiff may establish a *prima facie* case of Title IX retaliation by alleging facts sufficient to show that "she engaged in activity protected by Title IX, that the alleged

9

retaliator knew of the protected activity, that the alleged retaliator subsequently undertook some action disadvantageous to the actor, and that a retaliatory motive played a substantial part in prompting the adverse action." *Id*. The First Circuit has also required that a plaintiff must show that a university's "desire to retaliate was the but-for cause of the challenged [adverse] action." *Theidon v. Harvard Univ.*, 948 F.3d 477, 505 (1st Cir. 2020).

Again, Chloe's Title IX retaliation claim can relate only to alleged retaliatory actions that occurred on or after August 6, 2018 – nothing else. In its Order, the Court found correctly that none of the Plaintiffs pled a plausible Title IX retaliation claim. All of the Plaintiffs – except Chloe – have recognized the futility of pursuing a Title IX retaliation claim. Trying to stay in this litigation, Chloe has still not plausibly pled that Brown retaliated against her in its August 6, 2018 determination of a male student's complaint (SAC ¶ 197), which Brown addressed and determined under its policies and procedures. *See Doe v. Brown Univ.*, 505 F. Supp. 65, 83 (D.R.I. 2020) (Brown was contractually obligated to consider another student's complaint against the plaintiff and would have breached its contractual obligations if it did not do so); *aff'd in rel. part and rev. in limited part on other grounds*, 43 F. 4th 195 (1st Cir. 2022).

Reading Chloe's listed grievances in her proposed Title IX retaliation count of the SAC (Count V, ¶ 354) which predominantly pre-date August 6, 2018, she clearly wants to conflate several other legal theories into this cause of action – asserting allegations that read more appropriately as Title IX "deliberate inference," "erroneous outcome," or "selective enforcement" claims, as well as a state law breach of contract claims – none of which she has pled.[7] Nothing

---

[7] In its Reply Memorandum in Support of its Motion to Dismiss the FAC, Brown briefed how all of the Plaintiffs, including Chloe, sought improperly to conflate Title IX deliberate indifference claims into a separate retaliation claim. Doc. 27 at 22-24. Chloe attempts to improperly conflate these claims again in Count V of the proposed SAC.

has changed to alter the Court's correct conclusion that Chloe fails to allege any plausible claim "that Brown retaliated against [her] for making a complaint." Order at 2.

### ii.   Intentional Infliction of Emotional Distress Claim

To state a claim for intentional infliction of emotional distress, Plaintiffs must individually show "(1) that the conduct [was] intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct [was] extreme and outrageous, (3) there [was] a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question [was] severe." *Champlin v. Wash. Tr. Co., of Westerly*, 478 A.2d 985, 989 (R.I. 1984). The conduct required to state an intentional infliction of emotional distress claim under Rhode Island law must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hoffman v. Davenport-Metcalf*, 851 A.2d 1083, 1090 (R.I. 2004) (emphasis omitted) (quoting *Jalowy v. Friendly Home, Inc.*, 818 A.2d 698, 707 (R.I. 2003)). This is a "very high standard." *Id*. at 1089. To reiterate, Chloe's tort claim is limited by the three-year limitations period of R.I.G.L. § 9-1-14(b), so she cannot litigate claims predating August 6, 2018 and certainly not all the way back to April 2016.

Chloe's intentional infliction of emotional distress claim is premised entirely upon her disagreement with Brown's August 6, 2018 determination holding her responsible for a retaliation complaint that a male student filed against her, which resulted in a written reprimand (with no disruption of Chloe's status as a continuing undergraduate student at Brown or transcript notation). SAC ¶ 197. By her own choice, Chloe elected not to exercise her right to file an appeal of the determination, as allowed under Brown's Title IX procedures, which resulted in Brown's closing of the matter with no further action. *Id*. ¶¶ 198-201. Chloe alleges that she suffered from

11

"generalized anxiety" and "major depressive disorder," but she does not specify any resulting physical symptoms (which omission alone is fatal to her tort claim). *Id*. at ¶ 203. These few paragraphs hardly satisfy Chloe's burden of proving that Brown acted in a manner that was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Otherwise, every student disciplinary proceeding would prompt an intentional infliction of emotional distress claim by the student party dissatisfied with the result.

### 3. Even if any of Chloe's individualized claims are reinstated, they should be severed and required to proceed in a separate lawsuit.

In its motion addressing Plaintiffs' FAC, Brown argued that each Plaintiff's claims should be severed into a separate lawsuit because Plaintiffs want to litigate their individualized lawsuits under one caption solely for the sake of their convenience, with significant resulting prejudice to Brown. The Court's Order did not address nor rule on the severance aspect of Brown's motion, and Brown reserves its right to renew this request, especially as to Katiana, Taja, and Emma who can proceed only with individualized claims for monetary damages and cannot possibly have any role (either as a representative or class member) in the Rule 23(b)(2) putative class action seeking injunctive relief that has been allowed to proceed to discovery and an eventual certification motion.

Severance is especially justified if Chloe is allowed to replead and pursue a Title IX retaliation claim (that no one else is asserting) and/or a wholly individualized claim for intentional infliction of emotional distress. Severance under Rule 21 is the more proper approach than a later order mandating separate trials under Rule 42(b). Severance, which may be addressed any time *sua sponte* by the Court or upon the request of a party, results in separate actions – going forward as discrete, independent lawsuits. The severed cases "result in their own separate and final judgments from which appeals may be taken." 4 Moore's Federal Practice § 21.06. "In contrast,

an order of separate trials does not result in the filing of separate cases. Instead, it simply leads to two or more separate factual inquiries in the context of a single, properly joined case. No matter how many separate trials the court may order, they remain part of a single case." *Id*.

As Brown has questioned from the outset, "how many individualized cases should Plaintiffs be allowed to litigate under one case caption?" This question is particularly concerning when focusing on Chloe's claims. Chloe lacks standing to pursue injunctive relief, she cannot serve as a Rule 23(b)(2) class representative, she cannot be a member of a Rule 23(b)(2) class, she wants to bring a retaliation claim that no other Plaintiff is pursuing individually nor on behalf of the putative class, and she seeks to collect monetary damages that are wholly individualized to her. "[T]he Court must consider both equity and judicial economy; efficiency cannot prevail at the expense of justice." *W. Reserve Life Assur. Co. of Ohio v. Caramadre*, 2015 WL 13704429, at *3 (D.R.I. Nov. 16, 2015) (citation omitted). The Court must also examine whether a permissive joinder of Chloe, as proposed in the SAC with the other Plaintiffs, comports with fundamental fairness and would not prejudice Brown. *See Patrick Collins Inc. v. Does 1-38*, 941 F. Supp. 2d 153, 164 (D. Mass. 2013).

Chloe offers nothing to justify her permissive joinder in this litigation with the other Plaintiffs, falling far short of the two requirements of Rule 20(a). First, Chloe fails to "assert any right to relief, jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A). Second, she does not pose any "question of law or fact common to all plaintiffs." Fed. R. Civ. P. 20(a)(1)(B).

For example, Chloe and Katiana were never on the Brown campus at the same time as undergraduate students with Chloe graduating from Brown in May 2019, over a year before

Katiana enrolled as a first-year Brown student in September 2020. SAC ¶¶ 68, 147. In fact, Chloe wants to litigate alleged events dating as far back to April 2016, when Plaintiff Katiana was a high school freshman. Further, Jane 1 alleges that she was sexually harassed by a faculty member in the fall of 2020 - over a year after Chloe graduated from Brown. *Id.* ¶ 234.[8] Similarly, Jane 2 alleges claims pertaining to her reporting of sexual assault allegations to Brown in September 2019 – four months after Chloe's graduation. *Id.* ¶ 268. When these alleged events pertaining to other Plaintiffs occurred, Chloe was not a Brown student, was not on Brown's campus, and was pursuing her professional career in Colorado. Chloe has not plead anything suggesting that she ever participated or attempted to participate in any of Brown's education programs or activities after her May 2019 graduation.

Going further, the Court has ruled that the putative class sought in this litigation must be limited to only current Brown students. In January 2023, Brown will commence the Spring term of its 2022-23 academic year – the fourth academic year after Chloe's graduation at the end of the 2018-19 academic year. The Court will likely not adjudicate a class certification motion until Brown's 2023-24 academic year (commencing in September 2023), which will be the fifth academic year after Chloe's graduation. If a class is eventually certified (which should not occur for many reasons that Brown will argue), it is highly unlikely that any class member (a student enrolled during Brown's 2023-24 academic year) was at the University at any time during the 2016-17 through 2018-19 academic years of Chloe's undergraduate education.

Plaintiffs' persistence in trying to insert Chloe into this litigation epitomizes their distortion of the rules of permissive joinder. Brown should not be required to defend itself in one proceeding

---

[8] At paragraph 234, the SAC contains an apparent typographical error, listing the date of Jane 1's session with the faculty member as "October 2021." From the chronology of pled events, the correct time frame of the session would appear to be October 2020.

that jumbles distinct liability and monetary damages claims by several Plaintiffs requiring individualized proof (that are actually several improperly intermingled lawsuits), while simultaneously having to defend itself in the same lawsuit against an effort to certify a Rule 23(b)(2) class for injunctive relief that just two of the Plaintiffs (Jane 1 and Jane 2) have standing to seek. Former student Plaintiffs, who cannot be a part of nor possibly benefit from a class action proceeding, should be required to proceed in their own severed and separate lawsuits.[9]

In sum, Chloe's Title IX retaliation and intentional infliction of emotional distress claims should not be revived in this litigation. The Court's Order properly dismissed Chloe entirely from this litigation and should not be altered. Nothing that Chloe proposes now alters the futility of her claims, and Brown would prevail again if required to file a Motion to Dismiss responding to Chloe's claims as pleaded in the SAC. Further, even if Chloe is allowed to reassert claims against Brown to any extent, she should stand on her own and litigate in a severed lawsuit, not here.

> **B.   Portions of Plaintiffs' Title IX allegations and claims in the proposed SAC do not comply with the Court's Order.**

In its Order, the Court declined to recognize a "pre-assault" theory of Title IX liability. Yet, in their Title IX counts, the five remaining Plaintiffs individually, and Jane 1 and Jane 2 on behalf of the putative class, still want to backdoor "pre-assault" or "heightened risk" allegations into this litigation through their proposed SAC:

- In Count I alleging "Deliberate Indifference to Sex/Gender Discrimination,"

    Jane 1 and Jane 2, individually and on behalf of the putative class, seek to hold

---

[9] As Brown argued in showing the lack of standing of Chloe, Katiana, Taja, and Emma to seek injunctive relief, a Rule 23(b)(2) injunction must be based upon and address only alleged existing harms within Brown's education programs or activities, not the past individualized harms alleged by each of these four former students. Especially, no class-wide injunction can be based upon events that Chloe alleges to have occurred nearly five years ago or even longer (which likely predate the enrollment dates of all of the putative class members).


Brown liable for failing to "prevent" their alleged sexual assaults. SAC at Count I (¶¶ 312(d), 315).

- In Count III alleging "Deliberate Indifference to Sex/Gender Discrimination, the five remaining Plaintiffs allege that Brown is individually liable to each of them for "failing to take any action" to "prevent" or "deter" their alleged sexual assaults. *Id*. at Count III (¶¶ 332(d), 335)

- In Count IV alleging "Hostile Environment," the five remaining Plaintiffs allege violations of Title IX against Brown due to "the heightened risk of sex/gender-based discrimination on Brown's campus." *Id*. at Count IV (¶ 342).

Similarly, Plaintiffs still wrongly seek to recover emotional injuries damages through their Title IX claims. SAC at ¶¶ 340, 349 (contending erroneously that Plaintiffs may seek damages associated with "inconvenience," "insult," "mental distress," "humiliation," "anxiety," "and emotional and physical pain and suffering.").

In the proposed SAC, Plaintiffs' improper pleading of dismissed Title IX pre-assault/heightened risk liability allegations and emotional injury based-damage claims ignores the Court's Order. All such dismissed allegations and claims must be stricken from a SAC, if one is eventually allowed to be filed in order to have a properly narrowed and cleaned-up operative pleading that actually complies with the Court's rulings.

**IV.     CONCLUSION**

The Court should deny Plaintiffs' Motion to Amend and should not grant leave to file the SAC as proposed. Chloe's untimely and implausible claims should not be revived, nor should the five remaining Plaintiffs be allowed to plead Title IX "pre-assault"/"heightened risk" allegations and emotional injury damage claims that have been properly dismissed under the Court's Order.

16

BROWN UNIVERSITY

By Its Attorneys,

/s/ Steven M. Richard
Steven M. Richard (#4403)
Caitlyn Smith (#10361)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: 401-454-1000 / Fax: 401-454-1030
srichard@nixonpeabody.com
cxsmith@nixonpeabody.com

**CERTIFICATE OF SERVICE**

    I certify that, on this 21st day of December 2022, this memorandum was filed and served through the Court's CM/ECF system.

/s/ Steven M. Richard