UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


KATIANA SOENEN, TAJA HIRATA-EPSTEIN,
CHLOE BURNS, EMMA DENNIS-KNIERIEM,
JANE DOES 1-2, individually and
on behalf of all others similarly situated,

                  Plaintiffs,

v.                                         C.A. No.: 21-cv-325-JJM-PAS

BROWN UNIVERSITY,

                  Defendant.


**DEFENDANT BROWN UNIVERSITY'S MEMORANDUM IN
SUPPORT OF ITS  MOTION TO SEVER THE CLAIMS OF THE
FORMER STUDENT PLAINTIFFS INTO INDIVIDUAL LAWSUITS**

## I.    INTRODUCTION

Defendant Brown University ("Brown") requests that the Court sever from this putative class action the individualized claims seeking monetary damages pled by three former Brown students, Katiana Soenen ("Katiana"), Taja Hirata-Epstein ("Taja"), and Emma Dennis-Knieriem ("Emma").[1]  Applying Federal Rules of Civil Procedure 20(a) and 21 pertaining to the requirements for a permissive joinder of plaintiffs (which have not been met here) and the severance of misjoined claims, the Court should order that each of these former students must proceed separately in her own lawsuit.

In its Order entered on October 18, 2022, the Court determined that Plaintiffs cannot possibly satisfy the rigorous analysis to certify a class seeking monetary damages under Federal

---

[1]    Brown refers to each Plaintiff by her first name to be consistent with the pleadings in this litigation and not out of any disrespect.

Rule of Civil Procedure 23(b)(3).  ECF No. 34 at 4-5.  The Court has limited this putative class action to a Rule 23(b)(2) proceeding seeking a class-wide injunction, in which Jane Doe 1 ("Jane 1") and Jane Doe 2 ("Jane 2") are the only Plaintiffs with standing to act as class representatives of a putative class comprised of current Brown students.  *Id*.[2]  Katiana, Taja, and Emma, as former Brown students, lack standing to seek injunctive relief against Brown.  *Id*. at 4.  Consequently, these three former Brown students (Katiana who enrolled in another university as of the Fall 2022 semester and Taja and Emma who graduated from Brown in 2020 and 2021 respectively) cannot act as representatives of the putative Rule 23(b)(2) class, nor can they be class members who would benefit from the requested class-wide injunction.  Instead, each former student is limited to her distinct claims seeking her individualized monetary damages under Title IX of the Education Amendments of 1972 ("Title IX"), the Rhode Island Civil Rights Act ("RICRA"), and Rhode Island common law (alleging intentional infliction of emotional distress).[3]

Katiana, Taja, and Emma raise allegations pertaining to different academic years (with different Brown policies in effect to comply with evolving Title IX administrative requirements imposed by the United States Department of Education), different accused respondents, different locations where the alleged incidents occurred (whether on-campus buildings or third-party owned and controlled off-campus properties), differing interactions with various Brown administrators, and particularized alleged damages (regarding each Plaintiff's alleged economic losses and her

---

[2]    The Court dismissed the claims of a sixth Plaintiff and former Brown student, Chloe Burns ("Chloe"), as untimely and implausibly pled.  (ECF No. 34 at 1-2).  Plaintiffs seek to reinsert Chloe into this litigation through a proposed Second Amended Complaint, which Brown has opposed.  (ECF Nos. 44, 46).

[3]    In its Order, the Court addressed Brown's Rule 12(b)(6) arguments and request to strike the class allegations, but the Court did not address Brown's request to sever the claims.  Brown renews its severance request and respectfully requests the Court's adjudication before discovery proceeds.  Fed. R. Civ. P 21 (the Court may sever a claim against a party "at any time" *sua sponte* or by a party's motion).

alleged emotional injuries with physical symptomatology).   First Am. Comp. (ECF No. 15, "FAC") at ¶¶ 70-107 (Katiana), ¶¶ 108-47 (Taja), ¶¶ 184-210 (Emma).  In fact, Taja graduated <u>before</u> Katiana enrolled in Brown.  *Id.* ¶¶ 70, 108.  Emma alleges upon events going as far back as October 2017 and up to the fall 2019 semester – all of which were <u>before</u> Katina came to Brown. *Id.* ¶¶ 185-210.

In the Court's evaluation of fundamental fairness, the preference of Katiana, Taja, and Emma to join their individualized claims, as well as tag along with Jane 1 and Jane 2 in this putative class action for injunctive relief, cannot outweigh the substantial prejudice that will be imposed upon Brown having to defend itself against all of these distinct claims simultaneously and collectively in one proceeding.   Before Brown is required to proceed any further in its defenses and respond to what will be substantial discovery particular to each individual Plaintiff (as well as Rule 23(b)(2) focused class discovery), the Court should sever the claims of Katiana, Taja, and Emma to require that each former student Plaintiff must stand alone on the Court's docket in her pursuit of individualized allegations and subject to Brown's particularized defenses.  As argued below, judicial economy and fairness will be promoted by severing the former students' claims.

## II.   STANDARD OF REVIEW

### A.   Standard to Evaluate Whether Permissive Joinder of Multiple Plaintiffs is Proper

Under Rule 20(a)(1), two requirements must be shown to permit the permissive joinder of plaintiffs.  First, the plaintiffs must "assert any right to relief, jointly, severally, or in the alternative with respect to or arising out of the same transaction or occurrence, or series of transactions or occurrences."  Second, the plaintiffs must show "any question of law or fact common to all plaintiffs aris[ing] in the action."  Fed. R. Civ. P. 20(a)(1).

"In making the determination of whether to permit joinder . . . the Court must consider both equity and judicial economy; efficiency cannot prevail at the expense of justice." *W. Reserve Life Assur. Co. of Ohio v. Caramadre*, No. CV 09-470S, 2015 WL 13704429, at *3 (D.R.I. Nov. 16, 2015) (citation omitted).  Even where permissive joinder may be technically appropriate, the Court must consider whether it comports with fundamental fairness and would not prejudice a party. *See Patrick Collins, Inc. v. Does 1-38*, 941 F. Supp. 2d 153, 164 (D. Mass. 2013).

> Multiple plaintiffs may join together in a single action if they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and any question of law or fact common to all plaintiffs will arise in the action. Fed. R. Civ. P. 20(a)(1)(A)–(B).  If both elements of this test are not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance.  In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs . . . [.]

*Cruz v. Bristol-Myers Squibb Co., PR, Inc.*, 699 F.3d 563, 568–69 (1st Cir. 2012) (internal quotation marks and citation omitted).

### B.       Standard to Evaluate Whether Misjoinder Requires Severance

Rule 21 provides that the "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  Rule 21 allows the Court to sever claims into separate causes of action that will proceed independently.  *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 559 (1st Cir. 2008) (citing 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2387 (1971); 88 C.J.S. *Trial* § 17 (2003)).  A severance under Rule 21 differs from the ordering of separate trials under Rule 42(b).  *Id*.  A severance into separate actions will result in a final judgment in each action from which an appeal may be taken.  By contrast, an order of separate trials keeps all claims in the same case (no matter how many separate trials are held), and a judgment on a claim tried separately is not an appealable final judgment, unless certified for immediate appeal under Rule 54.  *Id*.

Rule 21 does not define the grounds for misjoinder, but it is well-settled that plaintiffs are misjoined when they "fail to satisfy either of the preconditions for permissive joinder set forth in Rule 20(a)." *Malodonado Cordeiro v. AT&T*, 190 F.R.D. 26, 28 (D.P.R. 1999) (quoting 7 C. Wright., A. Miller, & M. Kane, *Federal Practice & Procedure: Civil 2d*, at § 1638 at. P.1443 (1986)). In deciding whether to sever claims, the Court should consider a number of factors: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *Wai Feng Trading Co. Ltd. v. Quick Fitting, Inc*., 2014 WL 4199174, at *8 (D.R.I. Aug. 22, 2014) (citation omitted). "Severance requires the presence of only one of these conditions." *Id*. "When the jury is likely to be confused, or there is risk of potential prejudice to one party by trying two claims together, the court should sever the cases." *Id*. (citation omitted).

## III.    STATUS OF THIS LITIGATION

Under its Order entered on October 18, 2022, the Court substantially narrowed this litigation by dismissing several of Plaintiffs' untimely, implausible, and unrecognized causes of action pled in the First Amended Complaint. ECF No. 34. Only the following five counts survived a Rule 12(b)(6) dismissal among the five remaining Plaintiffs, who each raise individualized liability and damages claims based upon distinct factual allegations:

- Three Title IX counts (Counts I-III) that are limited to Brown's "post-reporting" response to each Plaintiff's alleged sexual assault;

- A Rhode Island Civil Rights Act ("RICRA") count mirroring the "post-reporting" Title IX counts (Count XI); and

- An intentional infliction of emotional distress count (Count IX).

Of procedural significance, the Court has limited the putative class action to a proceeding under Rule 23(b)(2), to determine whether a class consisting of <u>current</u> Brown students can be certified and, if so, whether a class-wide injunction is appropriate. *Id*. at 4. Only Jane 1and Jane 2 have standing to seek injunctive relief.[4]   Katiana, Taja, and Emma, as former students, have no relationship to the injunction sought in this litigation.

In reviewing where this litigation stands, it is important to address the limited relief that may be sought in this Rule 23(b)(2) putative class action. "Rule 23(b)(2) allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (quoting Fed. R. Civ. P. 23(b)(2)). Rule 23(b)(2) does not apply where the plaintiffs seek individualized money damages. *Id*. at 360-61 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class . . . it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."). Yet, Jane 1 and Jane 2 want to recover alleged individualized monetary damages, an adequate remedy at law, while still seeking an injunction.

---

[4]   Jane 1 is scheduled to graduate from Brown in May 2023.  Upon her graduation and if she does not thereafter continue to participate or attempt to participate in Brown's education program or activity, Jane 1 will lack standing to seek injunctive relief.  At that time, Brown reserves the right to move for the severance of her claims for individualized monetary damages.  *See Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 276 (1st Cir. 2022) (a party's past exposure to alleged illegal conduct is insufficient to show standing without "continuing, present, adverse effects") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *Harris v. Univ. of Mass. Lowell*, 43 F.4th 187, 192 (1st Cir. 2022) (plaintiffs' claims for injunctive relief became "inescapably moot" when the university's policies no longer applied to them).

The inconsistent remedies sought by the two proffered Rule 23(b)(2) class representatives, Jane 1 (assuming that she still has standing to seek injunctive relief after May 2023) and Jane 2, can be addressed as this putative class action moves forward.  For now, the Court should address whether, as a matter of fundamental fairness, Katiana, Taja, and Emma should be allowed to litigate their individualized claims in this putative class action and whether these three former students should even be allowed to litigate together at all.

## IV. ARGUMENTS FOR SEVERANCE OF THE THREE FORMER STUDENTS' INDIVIDUALIZED CLAIMS INTO SEPARATE LAWSUITS

### A. Katiana, Taja, and Emma's claims do not arise out of the same transaction or occurrence.

Starting with the most basic fact, two of the remaining former student Plaintiffs – Taja and Katiana – were never enrolled at Brown at the same time.  Taja graduated from Brown in May 2020 (FAC ¶ 108), while Katiana enrolled at Brown as a first-year undergraduate student four months later in September 2020 (FAC ¶ 70).  During this four-month interval between Taja's May 2020 graduation and Katiana's September 2020 enrollment, a significant change occurred under Title IX law – the Department of Education substantially revised its Title IX regulations addressing sexual harassment effective <u>August 14, 2020</u>, which prompted Brown to issue revised policies and procedures in compliance with the new Title IX regulatory requirements.[5]

Taja and Katiana pled allegations pre-dating and post-dating August 14, 2020 respectively.  Taja raises allegations about her reporting of alleged sexual misconduct that dates back to

---

[5] The Title IX regulations address the definition of Title IX "sexual harassment," a funding recipient's responses to the reporting of sexual harassment to an appropriate individual with authority to take corrective action, the required grievance process to investigate and determine allegations stated in a written formal complaint accusing a respondent of sexual harassment, and the scope of impermissible retaliation.  *See* 34 CFR §§ 106.30, 106.44, 106.45, 106.71.

September 2018 and entirely pre-dating August 14, 2020 (FAC ¶¶ 108-147), while Katiana pleads allegations about alleged sexual misconduct during May and June 2021 (*id*. at ¶¶ 70-107).

Further, the three remaining former student Plaintiffs, Katiana, Taja, and Emma, do not allege that they were assaulted, harassed, or retaliated against by common alleged perpetrators. They do not allege that their claims relate to the same educational programs or activities at Brown. They do not raise alleged harassment that occurred in a temporally close time period.  They do not allege any common locations, and, in fact, Katiana alleges sexual misconduct that occurred at off-campus, third-party owned properties.  They do not allege that they interacted with the same or an overlapping set of Brown deans or administrators.

Because the adjudication of each Plaintiff's claims and Brown's respective defenses will require many individualized assessments, Rule 20's single transaction or occurrence requirement is not satisfied.  Mere allegations of an alleged discriminatory policy do not support joinder.  *See*, *e.g.*, *Harris v. Union Pacific Railroad Co*., 2020 WL 4504392, at *2 (D. Neb. Aug. 5, 2020) ("Although each of the individual plaintiff's claims are rooted in allegations that Defendant's fitness-for-duty policy is discriminatory, the claims nevertheless 'hinge on distinct facts that are unique to each plaintiff and, thus, do not arise out of the same transaction or occurrence.'") (quoting *Payne v. Grant County, Okla*., 2014 WL 3349617, at *2 (W.D. Okla. July 8, 2014)); *Corley v. Google, Inc.*, 316 F.R.D. 277, 285 (N.D. Cal. 2016) ("[T]he transaction or occurrence requirement is not met where plaintiffs would have to prove their claims or defendants would have to litigate their defenses on an individualized basis.");  *McDowell v. Morgan Stanley & Co.*, 645 F. Supp. 2d 690, 695 (N.D. Ill. 2009) ("The parties do not dispute that each of the Plaintiffs in this case has a different story to tell.  Though Morgan Stanley's alleged discriminatory conduct may

have occurred because of a company-wide policy, that conduct was rooted in individual decisions, made by different supervisors, at different times, and in four different offices.").

Katiana, Taja, and Emma must present individualized proof – both on liability and damages – in their Title IX and intentional infliction of emotional distress claims.  The Court has ruled that a Rule 23(b)(3) class action is inappropriate in this litigation, because individual questions (including those raised by each Plaintiff's allegations) predominate as to alleged Title IX violations, and monetary damages for any such conduct require a "more granular assessment" of each individual's claims.   ECF No. 34 at 4-5.   Because such individualized assessments predominate to prevent a Rule 23(b)(3) class, they similarly predominate among these three former students to make improper the joinder of their individualized claims.  "Although not identical, the predominance analysis under Rule 23(b) and the single transaction or occurrence analysis under Rule 20(a) may, in some instances, be two sides of the same coin."  *Todd v. Temper-Sealy Int'l, Inc.*, 2017 WL 2840272, at * 2 (N.D. Cal. June 30, 2017) (quoting *Corley*, 316 F.R.D. at 286); *see also In re EMC Corp.*, 677 F.3d 1351, 1355 (Fed. Cir. 2012) ("Like Rule 23 in class actions, Rule 20's two requirements – that the claims share 'question[s] of law or fact common to all defendants,' and 'aris[e] out of the same transaction [or] occurrence' - help ensure that the scope of the action remains 'consistent with fairness to the parties.'") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

Plaintiffs may assert that they should be joined together because they are represented by the same legal counsel who can coordinate their discovery.  Plaintiffs' preferred convenience should not be the driving factor in the joinder analysis; rather, the real resulting risks of unfairness and prejudice to Brown must be the paramount concerns.  This Rule 23(b)(2) putative class action should proceed forward only with Jane 1 and Jane 2 remaining as Plaintiffs.  Katiana, Taja, and

Emma (as well as Chloe, if allowed back into this litigation) should stand on her own merits in her separate lawsuit presenting individualized liability and damages issues.

In Title IX cases, absent a class action, the Court has consistently required a plaintiff to proceed individually. As an example of the Court's longstanding requirement, Brown refers to a series of cases dating back to the late 1990's in which four plaintiffs – represented by the same legal counsel – sought to join their Title IX and state law claims based upon alleged sexual harassment by a professor. While discovery was coordinated to minimize duplication, the Court required the plaintiffs to litigate in individual lawsuits that proceeded separately for adjudication.[6] Similarly here, the Court should require Katiana, Taja, and Emma to litigate in separate lawsuits, especially where the alleged facts underlying their individualized liability and monetary damage claims are wholly distinct and also are unrelated to the requested injunctive relief sought in this Rule 23(b)(2) putative class action.

**B.    Katiana, Taja, and Emma's claims do not satisfy the requirement of a question of law or fact common to all parties.**

In the First Amended Complaint, Katiana, Taja, and Emma have pled individualized alleged facts pertaining to different time periods, circumstances, events, party and third-party witnesses, applicable policies, and alleged damages.[7] The mere fact that these three former Brown

---

[6]    *See Marketa Wills v. Brown Univ., et. al.*, C.A. No. 95-cv-638; *Stacy Gray v. Brown Univ., et. al.*, C.A. No. 95-cv-639; *Emily Borod v. Brown Univ., et. al*., C.A. No. 97-cv-128; *Julia Stunkel v. Brown Univ. et. al.*, C.A. No. 97-cv-129. *See also Wills v. Brown Univ.*, 20 F.3d 184 (1st Cir. 1999). In the *Borod* and *Stunkel* cases, which were filed on the same day and involved the two plaintiffs' interactions with the professor in the same course, the plaintiffs sought to consolidate their cases. The Court declined to allow the plaintiffs to litigate together. *See* May 16, 1997 Order entered in *Borod* litigation, denying request to consolidate the litigation with the *Stunkel* case.

[7]    Subject to Brown's opposition (ECF No. 46), Plaintiffs seek to file a Second Amended Complaint trying to reinsert Chloe into this litigation, proposing **fourteen pages** of individualized factual allegations particular to the alumna. ECF No. 44-1 at 29-42.

students assert claims under the same laws (Title IX, RICRA, and a common law claim of intentional infliction of emotional distress) does not justify their joinder.  *See, e.g.*, *Harris*, 2020 WL 4504392, at * 4 (citing *Smith v. Planned Parenthood of St. Louis Region*, 225 F.R.D. 233, 246 (E.D. Mo. 2004)).

No single set of facts or questions of law will be dispositive across the cases on the Title IX/RICRA and intentional infliction of distress claims. On liability questions, the unique evidentiary assessments of each required legal element clearly makes joinder impossible.  On damages questions, Katiana, Taja, and Emma allege have suffered varying injuries, requiring the individualized assessment of each former student's educational records (both at Brown and elsewhere such as in the case of Katiana who has transferred to another institution), medical or counseling records, and testimony from treating physicians, experts, and other witnesses.

       **1.**       **Each Plaintiff's Title IX/RICRA claims will require an individualized analysis of each required element.**

Pursuant to its Order, the Court has allowed each Plaintiff to proceed only with Title IX and RICRA "post-assault" claims in Counts I-III and XI of the First Amended Complaint.  To establish a Title IX claim against a federal funding recipient based upon alleged student-on-student sexual misconduct, each Plaintiff must show that (1) she was subject to "severe, pervasive, and objectively offensive" sexual harassment; (2) the harassment caused her to be deprived of educational opportunities or benefits; (3) Brown was aware of this harassment in (4) its programs and activities and (5) its response, or lack thereof, to the harassment was "clearly unreasonable." *Porto v. Town of Tewksbury*, 488 F.3d 67, 72-73 (1st Cir. 2007).  The RICRA claims are analyzed along with the Title IX claims.  *Doe v. Brown Univ.*, 43 F.4th at 195, 206 n.7 (1st Cir. 2022) ("Rhode Island courts look to federal law in construing their analogous civil rights statutes * * * ;

accordingly, we need determine only whether [Plaintiffs'] discrimination claims are sound under federal law.").

The bar to impose institutional liability is very high.  To be actionable under Title IX, each Plaintiff must show that she was subjected to alleged "severe, pervasive, and objectively offense sexual harassment" that occurred within Brown's education program or activity, in a context under the "substantial control" of the institution.  *Davis as Next Friend of La Shonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644-45, 648 (1999).  Actual knowledge means knowledge of prior harassment by the alleged offending student.  Students may not establish actual knowledge by pointing to different incidents that involved different contexts, offenders, victims, and employees over time.  *See*, *e.g.*, *Pahssen v. Merrill Comm. Sch. Dist.*, 668 F.3d 356, 363 (6th Cir. 2012) ("Both the plain language of Title IX and controlling case law demonstrate that an individual plaintiff generally cannot use incidents involving third-party victims to show severe and pervasive harassment.  Title IX protects students from being 'excluded from participation in' or 'denied the benefits of' the accused school.  20 U.S.C. § 1681(a) [].  *Davis* established such denial of access as the sole basis for Title IX student-on-student harassment claims.  *Davis*, 526 U.S. at 650, 119 S. Ct. 1661 * * * Incidents involving third-party victims lack relevance unless the plaintiff can show that the incidents deprived her of [access to the school's educational opportunities or benefits].");  *Ostrander v. Duggan*, 341 F.3d 745, 750-51 (8th Cir. 2003) (student-on-student sexual abuse allegedly perpetrated by other students at different locations failed to satisfy the "know acts" requirement prescribed by *Davis*).

Even if each Plaintiff can establish that that Brown had actual knowledge that <u>she</u> was subjected by alleged actionable Title IX sexual harassment by another student, <u>she</u> must also prove that Brown's responsive actions to <u>her</u> reporting amounted to "'an official decision . . . not to

remedy'" the discrimination.  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

The alleged deliberate indifference must have also "cause[d the plaintiff] to undergo harassment

or ma[d]e [the plaintiff] liable or vulnerable to it."  *Davis*, 526 U.S. at 645 (internal quotations

omitted).  Consequently, each Plaintiff must show that Brown's response to her reporting (not the

reports by the other Plaintiffs) was "deliberately indifferent," such that it was "clearly

unreasonable in light of known circumstances" with causal effects upon her participation in

Brown's education program or activity.

Under the "deliberate indifference" standard, the Supreme Court emphasized that it does

not mean "that administrators must engage in particular disciplinary actions" to avoid Title IX

liability.  *Davis*, 526 U.S. at 648.  Nor does it mean that complainants reporting sexual harassment

are entitled to make particular remedial demands – in fact the Supreme Court further emphasized

that "courts should refrain from second-guessing the disciplinary decisions made by school

administrators."  *Id.* (citation omitted).   "Title IX does not require educational institutions to take

heroic measures, to perform flawless investigations, to craft perfect solutions, or to adopt strategies

advocated by [complainants].  The test is objective – whether the institution's response, evaluated

in light of known circumstances, is so deficient to be clearly unreasonable."  *Fitzgerald v.*

*Barnstable School Comm.*, 504 F.3d 165, 174 (1st Cir. 2007), *reversed on other grounds*, 55 U.S.

246 (2009).  "Title IX was not intended either to pretermit thoughtful consideration of students'

rights or to demand a gadarene rush to judgment."  *Id.*  "After all, in situations involving charges

of peer-on-peer harassment, a [school] has obligations not only to the accuser but also to the

accused."  *Id.*   Further, "investigations involve judgment calls," and "[t]hat is vitally important

because, in the last analysis, courts have no roving writ to second-guess an educational institution's

choices from within a universe of plausible investigative procedures."  *Id.* at 175.

As *Davis* and its progeny make clear, the deliberate indifference analysis requires an individualized examination of Brown's response to each Plaintiff's report of alleged sexual misconduct, not a global examination of Brown's responses to Plaintiffs collectively. Unlike a Title VII claim, a Title IX claim may not be premised on the "disparate impact" a policy has with respect to a protected group. *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 184 (D.R.I. 2016).[8]

Here, in the First Amended Complaint, Katiana (¶¶ 70-107), Taja (¶¶ 108-47), and Emma (¶¶ 184-210) have pled relationships and circumstances that are unique to each of them. Each raises particularized allegations pertaining to (1) her interactions with other Brown students, (2) the incident's context and location (*e.g.*, off-campus vs. on-campus), (3) the manner in which the incident was reported and to whom, and (4) Brown's responsive actions (e.g., determining appropriate interim measures pending adjudication, determining the proper scope of the investigation, determining whether an informal resolution was desired or appropriate, and/or determining appropriate sanctions upon a finding of responsibility).

Among the many factual distinctions within the individualized Title IX and RICRA claims pled by Katiana, Taja, and Emma, here are specific examples justifying severance:

- Varying Brown policies are at issue, particularly as their respective allegations and reporting pre-date or post-date August 14, 2020, when the Department of Education's substantially revised Title IX regulations took effect and when Brown adopted new policies and procedures to comply with the revised administrative requirements.

- Emma raises allegations about a cross-complaint filed by a respondent accusing her of sexual misconduct.

---

[8] Under the Title VII context, which unlike Title IX allows claims for a "pattern or practice" of discrimination causing a disparate impact, multiple-plaintiff cases are routinely severed. *See*, *e.g.*, *Cruz v. Bristol-Myers Squibb Co., P.R.*, 699 F.3d 563, 569 (1st Cir. 2012) (severance was proper because "each appellant lost his job under different circumstances [.]"); *Carrington v. Vertex Aerospace, L.L.C.*, 2004 WL 838014, at *1 (W.D. Tex. Apr. 8, 2004) (severing "allegations of discrimination by a common employer pursued by a single attorney").

- Katiana alleges sexual misconduct that occurred at off-campus properties that were not owned of controlled by Brown, while the Taja and Emma allege on-campus incidents.[9]

- Differing academic years are at issue pertaining to each Plaintiff's interactions with different administrators. In fact, Taja graduated from Brown in May 2020, four months before Katiana enrolled at the University as a first-year undergraduate student.

- Taja and Emma raise allegations relating to dating relationships, which pose distinct factual issues, compared to what is alleged by Katiana and her attendance at social functions and interactions with respondents where the sexual assaults allegedly occurred.

- The individual respondents in each matter are distinct and different third-party witnesses are involved.

Particularly, each Plaintiff must show that Brown's response to ***her alleged harassment*** was deliberately indifferent. Again, schools are "deemed 'deliberately indifferent' to acts of student-on-student harassment only where the [school's] response to the harassment or lack thereof is ***clearly unreasonable*** in light of the ***known circumstances***." *Davis*, 526 U.S. at 648. Here, both Brown's response and known circumstances varies as to each Plaintiff. Any attempt by Plaintiffs to argue that Brown was generally indifferent to sexual assault claims or rely on evidence of knowledge of earlier alleged assaults of their co-plaintiffs would impermissibly depend upon a

---

[9]   Katiana's Title IX claims will require a distinct analysis than those pled by Taja and Emma. Specifically, an initial question arises whether Katiana's allegations of off-campus conduct falls within Brown's education program or activity to state a Title IX claim. *See Roe v. St. Louis Univ.*, 746 F.3d 874, 884 (8th Cir. 2014) ("there was no evidence that the University had control over the student conduct at the off-campus party"); *Ostrander*, 341 F.3d at 750-51 (holding that a sexual assault of a university student by another student, who was a member of a fraternity, at a private residence that was not owned by the fraternity or the university, was not harassment under a "program or activity"); *Doe v. Univ. of Scranton*, 2020 WL 5993766, at *9 (M.D. Oct. 10, 2020) (amended complaint failed to explain any relationship between the defendant university and the off-campus housing where an alleged assault occurred).

theory of constructive notice, which the Supreme Court expressly rejected as a legal basis for Title IX institutional liability under *Gebser* and *Davis*.

In sum, joining the individualized Title IX/RICRA claims by Katiana, Taja, and Emma risks substantial prejudice to Brown. Allowing unconnected claims of alleged assault to proceed against Brown puts the imprimatur of the Court on an impermissible theory of constructive notice Title IX liability. Presenting cumulative evidence and testimony regarding unrelated alleged assaults and Brown's responsive actions will confuse the jury and lead to unfair inferences against Brown.

### 2. Each Plaintiff's intentional infliction of emotional distress claim will require individualized proof.

To state a claim for intentional infliction of emotional distress, each Plaintiff must show individually: "(1) that the conduct [was] intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct [was] extreme and outrageous, (3) there [was] a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question [was] severe." *Champlin v. Wash. Tr. Co., of Westerly*, 478 A.2d 985, 989 (R.I. 1984). Each Plaintiff must show that she was subjected to conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hoffman v. Davenport-Metcalf*, 851 A.2d 1083, 1090 (R.I. 2004) (emphasis deleted) (quoting *Jalowy v. Friendly Home, Inc.*, 818 A.2d 698, 707 (R.I. 2003)). This is a "very high standard." *Id*. at 1089. Finally, this claim requires a showing of physical symptomatology resulting from the alleged improper conduct. *Reilly v. U.S.*, 547 A.2d 894, 898 (R.I. 1988).

Applying the Supreme Court's ruling in *Cummings v. Premier Health Rehab Keller P.L.L.C.*, 142 S. Ct. 1562 (2022), the Court has ruled that Plaintiffs cannot recover emotional injury damages under their Title IX claims.  ECF No. 34 at 3.  As the Court noted in its Order, it is an unresolved question whether emotional injury damages are recoverable in a RICRA claim premised upon alleged Title IX violations.  *Id.* at n.2.[10]  As possibly their only means to seek emotional injury damages, Plaintiffs have elected to plead individualized claims of intentional infliction of emotional distress.  But, this pleading choice carries consequences compelling severance.

The required proof to show alleged emotional injuries will be highly distinct as to each Plaintiff, including any alleged resulting physical symptomatology.  For example, Katiana's alleged emotional injuries are entirely distinct from any alleged emotional injuries that Taja and Emma may separately proffer individually.  Even putting aside the many reasons to find an impermissible joinder and require severance as to the Title IX and RICRA claims, the assertion of intentional infliction of emotional distress claims alone compels that the Court should require Tatiana, Taja, and Emma to litigate their individualized tort claims in separate lawsuits.

### C.  The risk of juror confusion and prejudice to Brown is real, if Katiana, Emma, and Taja are allowed to litigate together in this action.

"Even if the requirements of Rule 20 could be satisfied, severance is nonetheless appropriate.  '[D]istrict courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness,

---

[10]   The unresolved state law question of RICRA's recoverable damages poses public policy and precedential issues extending beyond this litigation.  Respectfully, either the Rhode Island General Assembly or the Rhode Island Supreme Court should make the determination.  *Doe v. Brown Univ.*, 304 F. Supp. 3d 252, 261 (D.R.I. 2016) (declining to address an unresolved Rhode Island law question raising public policy concerns with "serious implications").

17

even where the standard for joinder under Rule 20 of the Federal Rules of Civil Procedure is otherwise met.'" *Harris*, 2020 WL 4504392, at *4 (quoting *Black Elk v. Roy.*, 2019 WL 885641, at *1 (D. Minn. Feb. 5, 2019)). *See also Acevado v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 522 (5th Cir. 2010) ("[D]istrict courts have considerable discretion to deny joinder when it would not facilitate judicial economy and when different witnesses and documentary proof would be required for plaintiffs' claims.").

> As recognized by other courts, in situations such as this where evidence is highly individualized, the risk of jury confusion and prejudice is significant. "The jury may simply resolve the confusion by considering all the evidence to pertain to all the plaintiffs' claims, even when it is relevant to only one plaintiff's case." *Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 518 (N.D. Ill 2000). *See also Grayson v. K-Mart Corp.*, 849 F. Supp. 785, 790 (N.D. Ga. 1994) ("There is a tremendous danger that one or two plaintiff's unique circumstances could bias the jury against defendant generally, thus prejudicing defendant with respect to the other plaintiffs' claims."); *Weir v. Litton Bionetics, Inc.*, Civ. No. H-85-2545, 1986 WL 11608, at *6-7 (D. Md. May 29, 1986) (granting motion to sever stating that "in view of the different facts which are pertinent to each of [the] claims, defendant would suffer prejudice if the claims were tried together").

*Harris*, 2020 WL 4504392, at *4 (citing the above cases to conclude "that due to the number of fact that are only relevant to individual plaintiff's claims, jury confusion and prejudice would result if the claims were tried together.").

### D.    Judicial economy will be preserved through severance.

Severance of the individualized claims of the three former student Plaintiffs (Katiana, Taja, and Emma) from this Rule 23(b)(2) class action is the fairest and most practical result. These former student Plaintiffs have no stake or role in the Rule 23(b)(2) putative class action, where two current Brown students (Jane 1 and Jane 2) are the only Plaintiffs with standing to seek a class-wide injunction that can benefit only <u>current</u> Brown students if granted. The fact that discovery in this putative class action and the severed lawsuits could overlap does not compel keeping Katiana, Taja, and Emma joined as Plaintiffs here:

> To the extent that some remaining discovery relates to all Plaintiffs' claims, counsel may coordinate this discovery to prevent duplication. Moreover, because the evidence that will be necessary in motion practice will be largely individualized and plaintiff-specific, motion practice will not be complicated through severance. To the contrary, separate summary judgment briefing for each plaintiff's claims may clarify issues as the briefing will be more focused and hopefully more succinct. The same is true regarding the presentation of evidence at trial. Although certain evidence may need to be offered at each individual trial, any inconvenience which may be caused by doing so is outweighed by the confusion to the jury and prejudice that would result from proceeding jointly with Plaintiffs' claims.

*Harris*, 2020 WL 4504392, at *5; *see also Gregory v. FedEx Ground Package Sys., Inc.*, 2012 WL 2396873, at *13 (E.D. Va. May 9, 2012), *report and recommendation adopted*, 2012 WL 2396861 (E.D. Va. June 25, 2012) ("[T]here is no reason severing Plaintiffs' claims should interfere with coordinated discovery. The parties remain free to coordinate discovery requests and depositions as they see appropriate, and apply to the Court for relief as circumstances require. Severance assures that to the extent discovery disputes arise in the context of individual plaintiffs, they can be resolved without delaying proceedings for the remaining plaintiffs.").

Through severance, judicial economy and overall efficiency will be preserved, while avoiding the substantial prejudice to Brown. The Court and the parties may coordinate the case management of the individual lawsuits to ensure that each Plaintiff's claims are fully developed in the most efficient way while separated for adjudication. Regarding some of the Plaintiff's allegations, the discovery challenges may be more extensive than in others. Witnesses and documents in the older claims (Taja's allegations date back to 2017) may be more difficult for either party to locate. Any difficulties encountered in one case need not delay any of the others.

The great weight of the severance factors, including the entirely unrelated factual allegations, different witnesses and evidence, the evolving Title IX administrative frameworks (with resulting changes in Brown's policies and procedures), and the serious danger of prejudice to Brown under any of Plaintiffs' theories of relief if allowed to be combined together, strongly

19

supports severing each former student Plaintiff's claims in a separate action.  Certainly here, the individualized cases posed by Katiana, Emma, and Taja will require review of the extensive record evidence particular to each Plaintiff's allegations and claims.  For example, discovery regarding Katiana's claims will require document productions and depositions about her allegations of sexual misconduct and Brown's responsive actions during the summer of 2021, which will entail witness examinations (including third-party witnesses) and document productions that will have little, if any, relation to Taja and Emma's allegations dating back several years earlier.  Katiana and Taja were never enrolled at Brown at the same time, with Taja graduating in May 2020 and Katiana enrolling in September 2020.  The records pertaining to each former student's alleged sexual assault and Brown's responsive actions should be maintained, addressed, and adjudicated in separate actions for clarity and efficiency.

## V.      CONCLUSION

Katiana, Taja, and Emma share a common defendant and a common set of lawyers, but are otherwise unrelated.  The three former students' allegations and claims are disconnected in time, circumstances, and locations, with different alleged respondents in separate and distinct alleged incidents.  Also, under the Court's Order, they have no relationship at all to the injunctive relief sought in this putative Rule 23(b)(2) class action.

With class discovery to commence soon and extensive motion practice anticipated on the class certification issues, it would be unfair and prejudicial to Brown to allow these three former student Plaintiffs to tag along in this Rule 23(b)(2) putative class action seeking injunctive relief, while pursuing entirely individualized claims for monetary damages.  Severance of Katiana's, Taja's and Emma's claims into three separate lawsuits is the fairest and practical way to proceed, and the Court should grant Brown's Motion to Sever the Claims of the Former Student Plaintiffs

into Individual Lawsuits.  Each former student Plaintiff will still have her own day in court standing on her own merits and subject Brown's defenses particularized to her claims.

                    BROWN UNIVERSITY

                    By Its Attorneys,

                    /s/ Steven M. Richard
                    Steven M. Richard (#4403)
                    Caitlyn Smith (#10361)
                    Nixon Peabody LLP
                    One Citizens Plaza, Suite 500
                    Providence, RI 02903
                    Tel: 401-454-1000 / Fax: 401-454-1030
                    srichard@nixonpeabody.com
                    cxsmith@nixonpeabody.com

                    January 3, 2023


## CERTIFICATE OF SERVICE

   I certify that, on this 3rd day of January, 2023, this memorandum was filed and served through the Court's CM/ECF system.

                    /s/ Steven M. Richard