## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JANE DOE 2, individually and on behalf of all others similarly situated[1]<br>    *Plaintiff,*<br><br>  v.<br><br>BROWN UNIVERSITY<br>    *Defendant.* | C.A. No. 1:21-cv-00325-JJM-PAS |

**DEFENDANT BROWN UNIVERSITY'S OBJECTION TO PLAINTIFF'S MOTION FOR ENTRY OF REVISED CASE SCHEDULING ORDER, AND BROWN'S CROSS-MOTION FOR A STAY OF THIS PUTATIVE CLASS ACTION[2]**

Defendant Brown University ("Brown" or the University) respectfully requests that the

Court hold a hearing or a conference to evaluate the status of this litigation, in order to address the

University's concerns about Plaintiff Jane Doe 2's proposed amendments to the pre-trial

---

[1]     In the operative First Amended Complaint (ECF No. 15), six former and current Brown students were named as representative plaintiffs in this putative class action. In its October 18, 2022 Order (ECF No. 34), the Court dismissed the claims for injunctive relief by three of the named plaintiffs – Katiana Soenen, Taja Hirata-Epstein, and Emma Dennis-Knieriem – because they lack standing as former Brown students, so they cannot serve as representative plaintiffs in a Rule 23(b)(2) class action. The Court also dismissed the claims of Chloe Burns, a former Brown student. Recently, Jane Doe 1 withdrew from this litigation on the eve of her May 2023 graduation from the University. ECF No. 58, 6/1/23 Text Order. The sole remaining plaintiff with standing – Jane Doe 2 – is a Brown graduate student who will complete her academic studies during the upcoming 2023-24 academic year.

[2]     Separately, each plaintiff in the four severed individual cases seeking alleged monetary damages - Katiana Soenen (23-cv-46), Taja Hirata-Epstein (23-cv-47), Emma Dennis-Knieriem (23-cv-48), and Jane Doe 2 (23-cv-51) – has moved for an extension of the current factual discovery deadline in her case. Brown does not object to the requested extension of the fact discovery period in each case (with corresponding adjustments to all subsequent pretrial deadlines, including expert disclosures and summary judgment filings). Brown will file an assent in each of the severed cases to confirm its agreement. Brown's scheduling concerns are limited to this putative class action for the reasons stated herein.

scheduling order in this putative class action. This request is timely and appropriate because the declaratory and mandatory injunctive relief sought by Jane Doe 2 in the First Amended Complaint will likely be mooted by impending amendments by the United States Department of Education ("Department") to its administrative regulations codified at 34 CFR Part 106, which govern the Department's statutory oversight of federal educational funding recipients under Title IX of the Education Amendments of 1972 ("Title IX"). *See* 20 U.S.C. § 1682. Recently, the Department and the Office of Management and Budget ("OMB") announced that the Department's amended Title IX regulations will issue in October 2023. Copies of the Department's May 26, 2023 blog posting and the OMB's spring 2023 regulatory agenda notice are attached as Exhibits A and B respectively.

The Department's soon-to-be completed Title IX rulemaking process dates back over a year to July 12, 2022 (the 50th anniversary of Title IX's 1972 enactment), when the Department issued its notice of proposed rulemaking, publishing for public comment proposed significant changes its existing Title IX regulations. As the Department recently updated the public (Ex. A), it received and is now finalizing its review of over 240,000 comments to the proposed Title IX amendments (twice the number of comments submitted during the Department's last Title IX rulemaking process leading to amendments effective as of August 14, 2020).

The OMB's recent regulatory agenda notice (Ex. B) describes the broad scope to the Department's impending Title IX regulatory amendments within 34 CFR Part 106:

> The Department plans to issue a final rule amending its regulations implementing Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., consistent with the priorities of the Biden-Harris Administration. These priorities include those set forth in Executive Order 13988 on Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation and Executive Order 14021 on Guaranteeing an Educational Environment Free from Discrimination on the Basis of Sex, including Sexual Orientation and Gender Identity. The proposed amendments include, among others, revisions to 34 CFR

106.2 (Definitions), 106.6 (Effect of other requirements and preservation of rights), 106.8 (Designation of coordinator, dissemination of policy, and adoption of grievance procedures), 106.10 (Scope), 106.11 (Application), 106.30 (Definitions), 106.31 (Education program or activities), 106.40 (Parental, family, or marital status; pregnancy or related conditions), 106.44 (Action by a recipient to operate its education program or activity free from sex discrimination), 106.45 (Grievance procedures for the prompt and equitable resolution of complaints of sex discrimination), 106.46 (Grievance procedures for the prompt and equitable resolution of complaints of sex-based harassment involving student complainants or student respondents at postsecondary institutions), 106.51 (Employment), 106.57 (Parental, family, or marital status; pregnancy or related conditions), 106.60 (Pre-employment inquiries), and 106.71 (retaliation).[3]

Upon its issuance of the significantly amended Title IX regulations, the Department will afford federal educational funding recipients, such as Brown, with an implementation period to review and amend as necessary their existing Title IX policies, staffing, trainings, and procedures. Based upon the Department's last Title IX regulatory rulemaking process, the transition period could be ninety days, which would result in the amended Title IX regulations taking effect by the start of Brown's spring 2024 semester (which will be Jane Doe 2's final semester at the University).[4]

For the reasons addressed below, Brown respectfully submits that the Court should confer with the parties to address the impacts of the Title IX regulatory requirements upon the current status and future course of this case, including a frank assessment whether this putative class action (praying for expansive declaratory and mandatory injunctive relief) will have any viable path

---

[3]    Additionally, in April 2023, the Department issued a notice of intended rulemaking to amend its Title IX regulations to address sex-related eligibility criteria for male and female athletic teams.  The Department will similarly issue these finalized regulatory changes in October 2023. *See* Exhibit A; *see also* Exhibit C (OMB notice).

[4]    When the Department issued last issued amended regulations in May 2020, it afforded a 90-day transition period before the rules took effect on August 14, 2020.

forward as pled and especially in light of the significant changes to the Title IX regulatory requirements.

## I.    The Department's Statutorily Mandated Title IX Regulatory Oversight

Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). As a statute enacted under the Spending Clause of the United States Constitution, "[t]he express statutory means of enforcement [of Title IX] is administrative: The statute directs federal agencies that distribute education funding to establish requirements to effectuate the nondiscrimination mandate, and permits the agencies to enforce those requirements through 'any . . . . means authorized by law,' including ultimately the termination of federal funding." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280-81 (1998) (quoting 20 U.S.C. § 1682)).[5]

Over the past decade, the Department has amended its Title IX requirements several times, dating back to the Obama Administration's issuance of a Dear Colleague letter on April 4, 2011 and subsequent additional guidance documents. The Trump Administration rescinded those guidance documents in September 2017. In November 2018, the Department initiated a rule making process to address specifically Title IX sexual harassment for the first-time in its regulations, which resulted in the current rules that took effect on August 14, 2020. Three years later, the Biden Administration's impending regulatory changes will soon impose significantly

---

[5]    "Title IX entitles agencies who disburse education funding to enforce their rules implementing the nondiscrimination mandate through proceedings to suspend or terminate the funding or through other means authorized by law." *Gebser*, 524 U.S. at 288 (citing 20 U.S.C. § 1682). A federal funding agency may not initiate enforcement proceedings until it has advised the funding recipient of alleged noncompliance and has determined that noncompliance may not be secured by voluntary means. 20 U.S.C. § 1682; *see also* 34 CFR 107.8(d).

different Title IX requirements upon federal funding recipients (including the expanded definitional and jurisdictional scopes of sexual harassment subject to the Title IX regulations).

## II.    Where this Putative Class Action Stands

This lawsuit is now much different structurally than it was upon its initial filing, narrowed solely to a Federal Rule 23(b)(2) putative class action, with just one named plaintiff remaining with legal standing to pursue the expansive declaratory and injunctive relief sought in the First Amended Complaint.  That single plaintiff, Jane Doe 2, is a graduate student who will complete her final year of studies during the upcoming academic year (2023-24), while the University will be simultaneously implementing its measures (including likely policy and procedure revisions) to ensure its continuing Title IX compliance, consistent with the Department's amended Title IX regulations.

As pled in the First Amended Complaint, Jane Doe 2 prays that this Court issue a declaratory judgment voiding Brown's current policies and imposing unprecedented permanent injunctive relief with the Court mandating going forward how the University must train its personnel and community, write and enforce its policies, staff and operate its Office of Title IX and Gender Equity, and conduct and determine its grievance procedures.  FAC (ECF No. 15) ¶ 305, p. 67 (prayers for relief).  As Brown has contended respectfully since the inception of this litigation, what Jane Doe 2 seeks is not the Court's proper role under Title IX.  *See* 20 U.S.C. § 1682 (expressly prescribing federal agency oversight to ensure compliance with Title IX's nondiscrimination mandate).   Brown will oppose vigorously motions by Jane Doe 2 seeking to certify a class and requesting declaratory and mandatory injunctive relief.  By the time that such disputed matters may reach the Court this fall or later, the Department will have already issued its

sweeping Title IX regulatory changes and Brown will be implementing its responsive compliance measures under newly revised policies and procedures.

Focusing on where we stand, if class-wide discovery commences now and proceeds through the end of September 2023 as proposed by Jane Doe 2, it would run right up against the Department's issuance of the amended regulations in October 2023.  Jane Doe 2's desire to embark on expansive and expensive class discovery over the next few months would require Brown to divert resources, personnel, and expenses away from the immediate important Title IX task at hand – proactively planning for the impending significant changes to Title IX's regulatory requirements. Further, in her intended class discovery, Jane Doe 2 seeks to examine the details and operations of Brown's Title IX staffing, trainings, policies, and procedures spanning back several academic years, as they existed under rescinded or soon-to-be-amended regulatory requirements,  The resulting historical data and documentation from such discovery would likely prove to be largely irrelevant to the future merits of this case (seeking prospective declaratory and injunctive relief, which would have to be examined based upon the significantly different requirements of the amended Title IX's requirements going forward, not rescinded guidance documents or since changed regulations).

Respectfully, it appears unclear how Jane Doe 2's prayers for judicial declaratory and injunctive relief, as pled in the First Amended Complaint, will remain ripe and avoid mootness in light of the new Title IX regulatory requirements.  Brown's Title IX policies and procedures, will likely differ upon the effective date of the amended Title IX regulations, compared to what they currently state in compliance with the existing (but soon-to-change) regulations.  Also, as another practical matter, Jane Doe 2's status as a graduate student in her final year at the University is a material factor in the big picture analysis, as she too will lack legal standing before any final

adjudication of this Rule 23(b)(2) class action seeking prospective injunctive relief, which would likely not take effect, even if ordered by the Court over Brown's objection, until the University's 2024-25 academic year (by which time Jane Doe 2 will have graduated).  Plus, Jane Doe 2 is pursing claims for alleged monetary damages – an adequate remedy at law - in her severed case.

## III.    A Stay of Class Discovery is Warranted

The Court has inherent authority to control the disposition of cases on its docket.  *See Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998); *see also Landis v. North American Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can be best done calls for the exercise of judgment, which must weigh competing interests and maintain and even balance."). The Court's authority includes the discretionary power to stay a proceeding for prudential reasons.  *See Microfinancial, Inc. v. Premier Holdings Intern., Inc.*, 385 F.3d 72, 77 (1st Cir. 2004.  The Court must ensure that the equities are considered and balanced, and a stay must be reasonable in duration.  *See Marquis v. F.D.I.C.*, 965 F.2d 1148, 1155 (1st Cir. 1992); *cf Aetna Cas. & Sur. Co. v. Kelly*, 889 F. Supp. 535, 538 (D.R.I. 1995) ("[A] stay may be appropriate if proceeding with federal suit would be inconsistent with '[wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'") (citations omitted).

Looking practically at where this litigation stands and what lies imminently ahead in the Title IX legal compliance landscape, Brown respectfully submits that Jane Doe's claims for a Rule 23(b)(2) class action, as pled in the First Amended Complaint, lack a plausible path forward to ever meet the rigorous requirements to certify a Rule 23(b)(2) class and impose class-wide

declaratory and mandatory injunctive relief.  Nonetheless, Brown respects that it is Jane Doe 2's choice whether she still wishes to pursue her putative class action.  Yet, the realities of both the case's current status and the impending significant revisions to the Title IX regulations cannot be cast aside.  They justify a stay of the proceedings through at least October 2023, so that the parties can await the Department's issuance of the new Title IX rules and evaluate their immediate and prospective impacts upon this litigation.  Plus, the parties will know the effective date by which Brown, as a federal educational funding recipient, must review and amend its Title IX policies and procedures as may be necessary to comply with the Department's significantly amended requirements.

In conclusion, Brown respectfully submits that it has shown good cause to request that the Court stay this litigation pending the Department's issuance of its amended Title IX regulations.  Upon their issuance in October 2023, the Court may schedule a prompt status conference, which would enable the parties to confer between themselves and with the Court at that appropriate time to determine how this case should proceed forward, if at all.

BROWN UNIVERSITY

By Its Attorney,

*/s/ Steven M. Richard*
Steven M. Richard (#4403)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1020
Fax: (866) 947-1332
srichard@nixonpeabody.com

Dated: June 19, 2023

## <u>CERTIFICATION</u>

I certify that, on June 19, 2023, Brown's Objection and Cross-Motion was filed and served electronically via the Court's CM/ECF system.

*/s/ Steven M. Richard*